## POTTS v. ALEXANDER.

### (Circuit Court, W. D. New York. November 1, 1902.)

### No. 133.

**1. EQUITY—PLEADING—DEFENSES—LACHES.**
The defense of laches may be interposed by plea, answer, or demurrer, or it may be raised on the hearing or preliminary thereto.

**2. SAME.**
Defendant's husband sold to plaintiff's assignor in 1881 all his standing pine timber land on a certain stream in the state of Michigan, together with a certain lumbering outfit, and agreed that, if any land had not been deeded under the contract, deeds to such land would be executed on application. This contract was not recorded until 1887, when it was recorded in one county, and 10 years later a certified copy was recorded in another county. In 1886, 1888, and 1900 defendant, her husband having died in 1885, conveyed certain of the lands to other parties, which plaintiff claimed under the contract, but no action was begun to enforce the same until 1900, though plaintiff's assignor had full knowledge of the transfer at least eight years earlier. The action brought was dismissed, and at different times between 1890 and 1893 letters were addressed to defendant at the place where she was supposed to reside, but no answers were received, and an attorney employed to locate her was unable to do so; but no other efforts were made to prosecute the claim until the suit in question was instituted in August, 1901. *Held*, that an application by the plaintiff for leave to file a replication nunc pro tunc after an order dismissing the cause for failure to file the same should be denied on the ground that plaintiff's claim was barred by laches.

**3. SAME—LIMITATIONS.**
State statutes of limitations, while relevant in federal courts of equity on an issue of laches, are not binding on such courts.

---

¶ 3. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

See Courts, vol. 13, Cent. Dig. § 983; Equity, vol. 19, Cent. Dig. § 242.

·In Equity.

Harvey L. Brown (Elliott & Elliott, of counsel), for complainant.
Morey & Bosley, for defendant.

HAZEL, District Judge.   This is a motion by the complainant for
leave to file his replication nunc pro tunc.   The complaint was filed
August 7, 1901.   The answer was filed December 9, 1901, after sev-
eral extensions by stipulation.   On March 24, 1902, no replication
having been filed, an order was entered as of course dismissing the
complaint pursuant to equity rule 66.   It appears by the moving
papers that complainant's counsel who prepared the bill resides at
Marion, Ind.   His solicitor is a resident within the jurisdiction of
this court.   Each seems to have relied upon the other to file the
replication.   None was filed within the period fixed by rule; hence
this application to the grace and favor of the court.   Motions of
this character are ordinarily treated with indulgence, and relief is
generally granted where the application is made in good faith, and
when the default is fully excused.   Peirce v. West, Fed. Cas. No.
10,909, Pet. C. C. 351; Fischer v. Hayes (C. C.) 6 Fed. 63–76, 19
Blatchf. 13; Robinson v. Satterlee, Fed. Cas. No. 11,967, 3 Sawy.
134; 1 Fost. Fed. Prac. p. 277; Robinson v. Randolph, Fed. Cas.
No. 11,963, 4 Ban. & A. 317.   There is no general or positive rule on
the subject of allowing a party in default to come into court to inter-
pose his defense, or when the application, as here, is made by com-
plainant to prosecute his alleged cause of action.   The application is
vigorously opposed on the ground of manifest laches of complain-
ant, which appears upon the face of the bill.   This opposition to al-
lowing the relief ordinarily granted in equity requires an extended
examination of the facts alleged in the bill.   Is the claim set forth
in the bill stale, or has there been such failure to seek equitable re-
lief as to justify this court in a refusal to consider complainant's case
upon his own showing?   The defense of laches may be interposed
by plea, answer, or demurrer, and may also be raised on the hearing,
or preliminary thereto.   Manufacturing Co. v. Williams, 15 C. C. A.
520, 68 Fed. 494; Lansdale v. Smith, 106 U. S. 391, 27 L. Ed. 219;
1 Bates, Fed. Eq. Proc. 336.   The theory of counsel for defense is
that .great inconvenience or hardship would result to defendant by
allowing the relief sought; that she will be put to great expense in
preparing her defense, which involves the examination of records
and abstracts of lands situated in four counties in the state of Michi-
gan; and will necessarily be put to great expense in procuring wit-
nesses who are acquainted with market values of timber lands at a
period from 10 to 20 years prior to the institution of this suit.   She
claims that the damages, if any, which have accrued to complainant,
depend upon timber values from 1881 to 1892, inclusive, and upon
the particular value of white pine, Norway pine, and other timber
land.   Defendant therefore contends that, if the bill shows on its
face apparent laches and staleness of claim, the court, in the exer-
cise of its inherent power, should decline to vacate the order dismiss-
ing the bill, and by so doing refuse all equitable relief in the premises.
It is uniformly held that· a court of equity has the power to refuse

relief when injustice would apparently be done, and where it appears by the bill under consideration that undue and unexplained delay existed in the enforcement of an equitable remedy. The rule, as stated in Badger v. Badger, 2 Wall. 95, 17 L. Ed. 836, is as follows: One who appeals to the conscience of the chancellor in support of a claim where there has been laches in prosecuting it, or long acquiescence in the assertion of rights, "should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer." The doctrine enunciated has often been recognized and reaffirmed in the courts of the United States, and the maxim that "equity aids the vigilant" has been uniformly upheld. Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Lansdale v. Smith, supra; Hammond v. Hopkins, 143 U. S. 224, 12 Sup. Ct. 418, 36 L. Ed. 134; Foster v. Railroad Co., 146 U. S. 88, 13 Sup. Ct. 28, 36 L. Ed. 899; Wetzel v. Transfer Co., 12 C. C. A. 490, 65 Fed. 23; Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738. The rule imports a strict compliance with its provisions in tenor and spirit. The position, therefore, of the defendant on this motion is well grounded if the facts alleged by the bill clearly disclose that complainant has unduly slept upon his rights. In such case the court sitting in equity will take cognizance of and determine the question of laches, irrespective of the manner in which the inequity of the claim is called to the court's attention, provided complainant has had notice thereof. It is presumed that the bill fully and completely gives the facts which complainant may be able to prove upon the hearing. An early disposition of the controversy when the admitted facts show laches and staleness of claim finds encouragement in a court of equity, and its power is inherent to discourage such litigation at any point, unless good reason appears for the delay. Abraham v. Ordway, 158 U. S. 416, 15 Sup. Ct. 894, 39 L. Ed. 1036, and cases cited. This is especially the rule where no statute of limitation distinctly governs the case. In the case of Wagner v. Baird, 7 How. 258, 12 L. Ed. 692, it was held that:

"Length of time necessarily obscures all human evidence, and deprives parties of the means of ascertaining the nature of original transactions. It operates by way of presumption in favor of the party in possession. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment caused by the fraud or concealment of the party in possession, which will appeal to the conscience of the chancellor."

The question of laches, therefore, without straining any technical rule, may be properly considered upon this motion as if the subject-matter came before the court on demurrer, plea, or answer. Counsel for complainant has been fully heard upon this motion, and has filed a painstaking brief discussing the facts alleged in the bill of com-

plaint and the authorities bearing upon the question involved. He does not claim that the hearing will develop any facts different from those alleged in the lengthy bill. Its unusual allegations must be admitted for the purposes of this motion. It substantially avers that the complainant acquired from his father, John E. Potts, by an assignment dated July 3, 1890, all rights under a contract set out in the bill. This suit was commenced in August, 1901. The complainant seeks an accounting of all moneys realized from the sale of certain timber lands claimed to be covered by the contract hereinafter specifically referred to, and prays that the defendant be declared trustee of such funds for the benefit of complainant. Defendant was formerly the wife of one Bliss, who died in the year 1885. The basis of the claim in suit is a contract in writing, entered into between complainant's assignor and said Bliss on October 26, 1881, as follows:

"Au Sable, Mich., Oct. 26th, 1881.

"This is to certify that I have sold John E. Potts all my standing pine timber land on this stream or Au Sable for $66,500, which also includes river front and farm in 24—9 east; and it is further understood, if I have omitted to deed any timber land on this stream I now have or own, I will at any time make deed for same; and I also in the sale sell all my horses and camp outfit on this stream now in S. Vaughn's care.                    S. P. Bliss."

This instrument was recorded six years later, on December 23, 1887, in Oscoda county, Mich., where some of the property is situated, and nearly 10 years later—September 4, 1891—a certified copy was recorded in Alcona county, Mich., where also are situated some of the lands which are the subject of the suit. The contract was contemporaneous with the execution and delivery by Bliss of the deeds to other lands. The consideration,—$66,500,—which included the purchase price for certain personal property, was paid at different times within two years next succeeding the making of the contract. When the parties met for the purpose of concluding their arrangements of sale, it was discovered that divers lists and memorandums, descriptions of land to be incorporated in the instrument of conveyance, were missing; hence the making of the additional contract. The property in question is inaccessible timber lands, valuable for the timber standing and growing thereon, and available only when through railroad facilities for marketing and conveying it to convenient shipping points were established. The bill alleges on information and belief that subsequent to the sale to Potts Bliss removed from the state of Michigan to the state of New York; that the defendant, now Mrs. Alexander, took an active part on several occasions with her husband in concluding the negotiations; that she shared with her husband the management and responsibility of his business affairs, and was acquainted with the character of the lands and properties owned by him. The bill then alleges generally that the defendant had full knowledge of all the facts which led to the making of the conveyances to complainant's assignor and the contract above set out. It specifically states that, after the transaction was concluded, defendant promised complainant's assignor to join with her husband in all future conveyances that might be deemed necessary to carry out the agreement, and that the defendant succeeded by testamentary disposition to her husband's estate on

his death. Complainant's assignor first heard of the death of Mr. Bliss in 1886. Prior thereto he wrote several letters to him at Buffalo, N. Y., wherein he referred to the contract which they had made, but to which letters no replies were received. It is alleged that an attorney living in Buffalo, N. Y. was consulted for the purpose of ascertaining the residence of Mr. Bliss, but that no information was received from that source. At different times from the year 1890 to 1893 he addressed letters to Mrs. Bliss at Buffalo, N. Y., to which no replies were received. It does not appear that any of them were returned to him. Would it not be a fair inference, therefore, that they were received? Such an inference would have required an earlier commencement of the suit. On March 7, 1892, complainant filed a bill in chancery in Oscoda county, Mich., against the defendant and certain grantees asserting title to 1,840 acres of pine timber lands claimed to be covered by the contract. He alleges that he was then ignorant of the ownership by Bliss of other lands on the Au Sable river. The bill substantially averred the facts of the conveyances and contract as here, and prayed for specific relief against the defendant. The defendant was not served with process, and the suit was abandoned. It is alleged as a further reason for abandoning the suit that the timber had then been removed by the grantees, and an injunction to restrain them from despoiling the property would have been unavailing. The bill further states that complainant and his assignor have frequently endeavored, since making the contract, to discover the defendant's whereabouts, but they were unable to do so until the year 1900, when he learned that the defendant had remarried, and that she resided in Buffalo, N. Y. This information appears to have been obtained owing to inquiries made of a relative of the defendant named Curtiss. At this time complainant also learned that the defendant, prior to her remarriage, had lived in Tonawanda, N. Y. except for a short period of time. Efforts to sooner ascertain defendant's place of residence appear to have consisted merely in addressing letters to Mr. Bliss prior to his death; subsequently to the defendant, his widow; and in a fruitless attempt to ascertain where she resided through the medium of an attorney, who reported by correspondence that he was unable to find her. Lands sold by Bliss to complainant were chiefly valuable for the timber standing and growing thereon. It is also charged by the bill that the lands intended to be conveyed and included in the terms of the contract were held by Mr. Bliss as trustee for complainant's assignor, and that upon his death the defendant succeeded to the trust by operation of law. It is also charged that the lands described in the complaint as sold by Mrs. Bliss were included in the contract. Their aggregate value with the timber standing thereon at the time of making the contract and at the time of sale by defendant was $50,000. Without the timber their value is but nominal, while, if the timber had not been cut therefrom, they would now be worth $75,000. Defendant sold the land for $15,000, which is alleged to have been less than its real value. The bill discloses such a staleness of claim as to fully satisfy me that the defendant ought not to be required at this late day to meet its averments. No such impediments to an earlier enforcement of his claim are stated as reasonably justify the belief that com-

plainant has acted with required diligence, or in good faith. The laches of his assignor have the same effect as his own subsequent neglect. He has slumbered upon his rights, or at least has been so passive without cause that he cannot now invoke the aid of a court of equity.

The answer challenges complainant's right to sue because of laches, and pleads, among other things, the statute of limitations as a bar. The statute of limitations does not necessarily apply. The courts of equity at times have held that such statutes by analogy were applicable to equitable causes. The statutes in terms, however, are not applicable to the equity side of the court. The inherent principles of its own peculiar system of jurisprudence, however, are invariably applied by a court of equity. Abram v. Ordway, 158 U. S. 416, 15 Sup. Ct. 894, 39 L. Ed. 1036; Sullivan v. Railroad Co., 94 U. S. 811, 24 L. Ed. 324. On this point Chief Justice Fuller, writing for the court, in the case of Hammond v. Hopkins, supra, quotes the following, at page 273, 143 U. S., and page 435, 12 Sup. Ct., 36 L. Ed. 134, from the opinion of Justice Merrick, who rendered the opinion in the court below:

"Where there has been no change of circumstances between the parties, and no change with reference to the condition and value of the property, a court of chancery will run very nearly, if not quite, up to the measure of the statute of limitations as applied in analogous cases in a court of law. But where there has been a change of circumstances with reference to the parties and the property, and still more where death has intervened, so that the mouth of one party is closed, and those who represent his interests are not in a predicament to avail of the explanations which he might have made, out of the charities of the law and in consideration of the fact that fraud is never to be presumed, but must always be proved, and proved clearly, the courts limit very much, in such cases, the measure of time within which they will grant relief, because the presumption comes in aid of the dead man that he has gone to his account with a clear conscience."

Every case of this nature must stand or fall on the particular circumstances presented. Such is the uniform holding of the decisions. The delay in an earlier enforcement of the claim is not sufficiently excused in the case at bar. I am not satisfied that merely writing letters, to which no replies were received, was exercising such diligence to find the defendant as the exigencies of a meritorious claim required. Nothing appears to have been done to discover defendant from the year 1893 to the year 1900, a period of eight years. About nine years had elapsed when the suit was commenced after complainant had actual knowledge of the transfer by the defendant of timber lands to which he claimed equitable ownership. The complainant, however, must be presumed to have had earlier knowledge. The cause of action must be deemed to have accrued at that period of time when the conveyances were respectively recorded. The first conveyance was made on March 22, 1886, and related to lands situate in Alcona county. Other sales were made on January 20, 1888, February 14, 1890, and September 4, 1890. The bill does not state when these various conveyances were recorded. It avers the record, but the date and time are left blank. It will be assumed that the conveyances were recorded soon after their date. Public notice of such sales to

the world was given in the manner prescribed by law. It has been held that the statute of limitations begins to run from the accrual of the cause of action, and, when applied to the covenants in a deed, begins to run when the covenants are broken. Am. & Eng. Enc. Law (2d Ed.) 224. Applying that principle to the case at bar, it does not seem to me to be inequitable to hold that the implied covenants to make further conveyances to complainant's assignor contained in the contract were broken at the time of the respective sales; and, inasmuch as the deed of conveyance in each sale was recorded, it will be assumed that slight diligence on complainant's part would have made him acquainted with the transfers by Mrs. Bliss of property included in the contract, and above specifically referred to. Moreover, no reason appears why complainant could not have ascertained the nature and extent of any property owned by Bliss at any time subsequent to the making of the contract. An examination of the records would have apprised him of all lands of which Mr. Bliss was the owner in his lifetime. Indeed, an examination of records made subsequent to the first conveyance by Mrs. Bliss in 1886 doubtless would have apprised him of her place of residence. It was undoubtedly recited in the conveyance made by her. Even the tax gatherer might have been able to furnish useful information on that subject. Other avenues of information by which her residence would have become known were not followed. The bill discloses no specific element of fraud or concealment on the part of Mr. Bliss or the defendant. As already stated, the conveyances to various parties of the lands in question were made openly, and public notice thereof by recording was given to complainant and others as early as 1886. The record of these various deeds negatives the allegation of concealment. No attempt was made by complainant at the time of this conveyance, nor indeed, at the time he commenced the suit in chancery, to ascertain from the grantees the place of residence of defendant. This, it would seem, could easily have been done, as such grantees at that time lived in Iasco county, where it is alleged some of the land is situated. The bill does not disclose the existence of an express trust, in which no length of time could be a bar to an accounting, and in which laches could not be imputed to the cestui que trust in the enforcement of his rights. In Re Jones' Estate, 51 App. Div. 420, 64 N. Y. Supp. 667. The conveyances, in the circumstances must be considered as a denial of any trust relationship, and such denial is presumed to have come to the knowledge of the complainant when the transfers were recorded. Lemoine v. Dunklin Co., 2 C. C. A. 343, 51 Fed. 489. The fact that Potts frequently wrote Bliss, and after his death to his widow, on the subject of the contract, shows that he had reason for believing that all the timber lands had not been included in the deeds delivered to him in 1881. Tested by the rules many times announced, I think the bill must be held deficient in that it does not specifically and satisfactorily set out the existence of any reasonable impediments to the commencement of the suit at an earlier time. It is a pertinent assumption that, if the complainant had a meritorious grievance, he would long since have taken steps to protect his rights. Instead of proceeding zealously to recover damages to which he may have deemed himself

entitled, or holding the defendant to account or to discovery, he has stood idle, and by silence and apparent acquiescence has tacitly assented to the transfers made by the defendant. Complainant now asserts that the timber lands had a greater value than defendant received for them, and that he is the equitable owner thereof by virtue of a contract made with his father more than 20 years ago. No impediments appearing to an earlier commencement of the suit, his present position does not satisfy me of the justice of his cause. The subsequent commencement of actions against grantees, which were abandoned cannot relieve him from the imputation of sleeping on his rights. The contract was not recorded until a number of years after the death of Mr. Bliss, and after a sale of timber lands by Mrs. Bliss in Alcona county. Undoubtedly, material evidence is not now as available to the defendant as if the suit had been seasonably commenced. In the case of Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383, it was held that the death of one of the parties to an agreement and the loss of her testimony does not necessarily operate as an obstacle to the maintenance of the bill, but that it is a circumstance to be considered by the court in weighing the evidence. Here there are other circumstances which satisfy me that the defendant ought not to be called on to make proof of transactions long past, and as to the value of timber lands which may have gone beyond the memory of witnesses. I think that the objections raised by the defendant on this motion are tenable, and that by reason of laches in failing to duly assert his claim the complainant has placed himself in a position where a court of equity will not lend its power to his relief.

An order may be entered denying the motion for leave to file a replication and dismissing the bill. Costs having already been taxed in the order dismissing the suit, no further costs will be granted.