(No. 21555.—

THE CITY OF CHICAGO, Defendant in Error, *vs.* MENTOR MOORE, Plaintiff in Error.

*Opinion filed February 23, 1933.*

CHARLES C. MULL, for plaintiff in error.

WILLIAM H. SEXTON, Corporation Counsel, and MICHAEL L. ROSINIA, (MARK J. McNAMARA, of counsel,) for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

A complaint against plaintiff in error, Mentor Moore, (herein called defendant,) was filed in the municipal court of the city of Chicago charging him with conducting and operating a second-hand store in said city without having obtained a license so to do, in violation of section 3685 of the revised Chicago code of 1931. Defendant waived a trial by jury, and a trial by the court resulted in a judgment imposing upon him a fine of twenty-five dollars and costs. The trial court certified that the validity of a municipal ordinance was involved, and a writ of error has been sued out of this court for a review of the record.

The only evidence heard or offered at the trial was the testimony of the police officer who filed the complaint. He testified that defendant operated a store at 2238 Madison street, in the city of Chicago; that in the store there were shelves filled with second-hand magazines and books and two or three tables on which were also displayed second-hand books; that the magazines were offered for sale two for five cents or three cents for one; that there were new books as well as second-hand books in the store, and that witness did not see defendant sell any books or magazines but that at dates prior to the one mentioned in the complaint

he had seen customers in the store. Defendant made a motion to dismiss the case, based on the ground that the ordinance under which he was prosecuted was invalid and that the section of the ordinance mentioned in the complaint did not prescribe any punishment for its violation. This motion was denied.

Section 3684 of the revised municipal code of Chicago of 1931, so far as applicable to this case, reads as follows: "A second-hand store is hereby defined to mean any building, store, house, apartment, place or premises, or any part of such store or premises, where used or second-hand * * * books * * * or any other second-hand goods, wares or merchandise are bought, sold, offered for sale, exchanged, bartered, or kept with the intention of selling, bartering or exchanging." Section 3685 of the code provides as follows: "It shall be unlawful for any person, firm or corporation to operate or maintain a second-hand store without first obtaining a license as hereinabove provided." Section 3694 of the code provides that any person violating the ordinance of which sections 3684 and 3685 are a part shall be fined not less than twenty-five dollars.

Plaintiff in error contends that the ordinance in question as applied to this case is an invalid and unauthorized exercise of the power of legislation by the city council of the city of Chicago. On the other hand, defendant in error, the city of Chicago, contends that the city council was authorized to pass the ordinance by section 95 of article 5 of the Cities and Villages act, (Smith's Stat. 1931, p. 352; Cahill's Stat. 1931, p. 342;) which provides that city councils shall have power "to tax, license and regulate second-hand and junk stores and yards, and to forbid their purchasing or receiving from minors without the written consent of their parents or guardians, any article whatsoever, and to direct the location thereof."

The existence and powers of a municipal corporation are derived by it from the General Assembly. It has no

inherent power. Legislation by a municipal corporation is valid only when it is authorized by statute, and statutes granting powers to a municipal corporation are construed strictly against such corporation. Any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it. The implied powers which a municipal corporation possesses and may exercise are those necessarily incident to the powers expressly granted. Since a city has no power, except by delegation from the General Assembly, to license any occupation or to require the payment of a tax for the privilege of engaging in it, the power, if it exists, must be expressly granted or necessarily implied or incident to the power expressly granted. *Potson* v. *City of Chicago,* 304 Ill. 222; *City of Rockford* v. *Nolan,* 316 id. 60; *City of Chicago* v. *Northern Paper Co.* 337 id. 194.

In *City of Chicago* v. *Northern Paper Co. supra,* the defendant conducted a business in which it bought sorted rags and papers in bales by loads from dealers in those commodities, opened the bales, removed foreign substances, further sorted the rags and papers according to quality and made them into new bales, which it sold to mills in quantities of not less than five hundred pounds. It was held by this court that the business of the defendant was not one for which the city could require it to obtain a license under the power to tax, license and regulate second-hand and junk stores and yards. It was suggested that the question whether a business comes within the municipal power to tax, license and regulate, granted by statute, must be determined by the general character and scope of the business, and that the city could not extend its power to license and regulate by definition a business by ordinance. The decision in that case refers to the power given in the 95th section of article 5 of the Cities and Villages act to forbid second-hand and junk stores and yards purchasing or receiving from minors any article whatsoever without the

written consent of their parents or guardians, and states that that power enforces the conclusion that the power given was to license and regulate second-hand or junk stores or yards, which were of the nature to afford peculiar opportunities to buy stolen goods.

In *Eastman* v. *City of Chicago,* 79 Ill. 178, the defendants, who were engaged in conducting a retail book store and in connection with their other business bought and sold second-hand books, were convicted of the violation of an ordinance requiring a license to be taken out by dealers in second-hand goods. The ordinance defined a dealer in second-hand goods to be "any person who keeps a store, office or place of business for the purchase or sale of second-hand clothing or garments of any kind, or second-hand goods, wares or merchandise." It appears by stipulation in that case that the defendants were not only book sellers but dealers in all that class of goods usually kept in a retail book store, such as maps, legal blanks, stereoscopes and stereoscopic views, engravings and paintings, children's toys and games, and new as well as old books, and that their annual purchases were from $15,000 to $18,000. This court held in that case that book sellers dealing in such stock as is usually kept in a retail book store, who buy and sell in connection with their other business, and as incidental thereto, second-hand books, are not "dealers in second-hand goods," within the meaning of the ordinance.

In *City of Duluth* v. *Bloom,* 55 Minn. 97, 56 N. W. 580, the Supreme Court of Minnesota reversed a conviction of the defendant for violating an ordinance of the city of Duluth prohibiting the "carrying on and conducting the business of dealer in second-hand goods without having obtained a license so to do." The defendant kept a store in which he dealt in new and second-hand furniture, and dealing in second-hand furniture was a regular and principal part of his business. The ordinance by its terms applied to any person keeping a second-hand store or junk shop.

The court aptly stated that in using the phrase "second-hand store or junk shop" the city council must have intended to limit the ordinance to that class of second-hand stores known as junk shops, and that every junk shop is a second-hand store but every second-hand store is not a junk shop. The court in that case further said: "It is our opinion that it must be held that the city council intended the provisions of the ordinance to be limited to second-hand stores of the class commonly known as 'junk shops.' This is the class of second-hand stores over which police regulations are peculiarly needed, for the reason that they and pawn-brokers' shops are the places where thieves most usually attempt to dispose of stolen property and whose keepers not infrequently become fences for such goods—reasons which do not apply with anything like the same force to second-hand stores of other kinds, as, for example, second-hand furniture or second-hand book stores."

By the provisions of section 95 of the statute before cited, second-hand and junk stores are classed together in a manner indicating that the General Assembly had in mind only second-hand stores carrying on a business similar to that carried on by junk stores, where inducements are liable to be held out to minors to steal articles in order to sell them at such stores. The cases above referred to support this conclusion, and they also support the conclusion which we have reached that the evidence in this case does not show that the store conducted by defendant was within the class of stores which city councils are given the power to tax, license and regulate by that section of the statute. The only second-hand articles that defendant dealt in, so far as the evidence shows, were books and magazines. There is no evidence that his store was in the nature of a junk store.

The ordinance under which defendant was convicted is invalid so far as it applies to the facts in this case, and the judgment of the municipal court of Chicago is reversed.

*Judgment reversed.*