(Nos. 31384, 31385, 31386.—
THE CITY OF CHICAGO HEIGHTS, Appellant, vs. WESTERN UNION TELEGRAPH COMPANY, Appellee.—Same Appellant vs. ILLINOIS BELL TELEPHONE COMPANY, Appellee. —Same Appellant vs. PUBLIC SERVICE COMPANY OF NORTHERN ILLINOIS, Appellee.

*Opinion filed September 21, 1950.*

Joseph J. McGrane, Corporation Counsel, and Russell & Bridewell, both of Chicago Heights, (John A. Cook, and Maurino R. Richton, of counsel,) for appellant.

Eckhart, Klein, McSwain & Campbell, of Chicago, and John H. Waters, of New York, N. Y., (John Neal Campbell, of counsel,) for appellee Western Union Telegraph Co.; Mitchell, Conway & Bane, of Chicago, (Stephen A. Mitchell, Charles A. Bane, Addison L. Gardner, Jr., Walter M. Fowler, Charles E. Brown, and Thomas J. Russell, of counsel,) for appellee Public Service Company of Northern Illinois; Sidley, Austin, Burgess & Smith, of Chicago, (Kenneth F. Burgess, Leslie N. Jones, Howard Neitzert, George A. Ranney, Jr., and Henry A. Preston, of counsel,) for appellee Illinois Bell Telephone Co.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

During the month of October of 1948, three separate complaints in chancery were filed by the city of Chicago Heights, a municipal corporation, in the superior court of Cook County, against each of the named corporate defendants, seeking an accounting, and relief at law by *mandamus* and to recover fees and penalties under an old ordinance of the plaintiff city passed in 1919, and under which it was sought to exact five dollars for each new telegraph, telephone, electric light or street railway pole erected in any street, avenue, alley or public place of the city; and, in addition, one dollar per pole per annum; and, in addition, 2½ cents per wire for each street crossed by wires owned or used by said companies and maintained upon rights of way or private property within said city; and, in addition, an annual fee of ten cents per wire for each street crossed by wires strung over or upon houses or other buildings, except those in cables of five or more wires, then the annual fee to be 2½ cents per wire for each street crossed; and, in addition, penalties of not less than one hundred dollars nor more than two hundred dollars for each violation, the ordinance declaring therein that each month the companies continued in default in the payment of the fees and in the filing of the statement as to the number of poles and wires, as required by the ordinance, should constitute a separate and distinct offense.

Each defendant filed a motion to dismiss, assigning in support of said motions a large number of grounds therefor, including constitutional reasons. The trial court sustained the motions and dismissed all three suits, whereupon the plaintiff sought to file an amended complaint, which was denied by the court in each instance. The trial judge certified the validity of a municipal ordinance was involved and that the public interest required a direct appeal

to this court. These appeals by the city followed, and the cases were consolidated on appeal.

The city charges the companies erected and maintained poles both prior to and since the passage of the ordinance in question in 1919, and until the present; that it was defendants' duty to file with the city clerk on or before October 1, 1919, and on the first day of October of each year thereafter, a statement in accordance with section 3 of said ordinance showing the number and location of all poles and wires and were under a duty to pay the fees due thereunder by October 15 of each year; that defendants, "though often requested to do so," have not filed the statements or paid the fees as required; and asks the court to issue *mandamus* to compel the filing of the statements; and asks for an accounting for the years from 1919 to 1948, together with interest thereon, and for other equitable relief. Count II of each complaint states notice was served on or about September 14, 1948, to each defendant requesting compliance with the provisions of the ordinance and to pay into the city treasury the fees due it and that the same, "though often requested," have not been paid, and seeks a recovery for the penalties prescribed, as above outlined. A total of $34,800 is sought to be recovered from the three companies.

The city further contends the ordinance is a proper one and is within its corporate powers to enact; that the question of reasonableness or unreasonableness of the ordinance is one of fact, and the defendants should have been required to answer the complaint, and the cases permitted to proceed to hearing on this question; and that the trial court erred in refusing to permit the filing of the amended complaint.

The companies, on the other hand, insist the complaints state no cause of action; the remedies sought are improper; the provisions of the ordinance are ambiguous, uncertain

and contradictory; the complaints fail to allege sufficiently the passage or approval thereof; the provisions of the ordinance are void for want of lawful authority to pass the same; are discriminatory and deprive defendants of the equal protection of the laws guaranteed by the Federal and State constitutions, and attempt to place a tax upon interstate commerce; that the fees and charges are unreasonable and bear no relation to any regulatory power of the city; that the ordinance is void because it purports to impose a tax under the pretext of a license fee for the sole purpose of raising revenue, and is, therefore, beyond the power of the city to enact; and that the court was correct in refusing to permit the amended complaints to be filed, on the ground the same merely attempted to excuse the delay in enforcing the ordinance and in no way cured the claimed defects set out in the motions to dismiss the original complaint. Two of the three defendants further urge the defense of *laches,* and all raise, in their briefs, the contention that it is apparent upon the face of the complaints that the statute of limtations bars at least a major portion of the claims.

Not taking into consideration some duplications, counsel for the various parties cite a total of over 223 cases in their briefs purporting to bear upon the subject matter of the litigation. To analyze in detail this mass of cumulative authority and to classify and discuss all of the points raised would be an herculean task which it is not necessary to undertake, as the issues herein narrow down to a few main points which are controlling.

It may be stated as a fundamental proposition that an ordinance is presumed to be valid and reasonable, and, if attacked, the party attacking it has the burden of establishing that it is invalid and unreasonable. (*City of Chicago* v. *Hulbert,* 234 Ill. 321.) Also, as a general proposition, a municipality has the power to regulate the use of its streets and alleys; to prevent and remove encroach-

ments or obstructions upon the same; and to regulate laying of mains, erection of lights, and the space over the streets, alleys, or other public places of the city, and to regulate and prevent the use of streets, sidewalks and public property for various purposes, including telegraph poles. (Ill. Rev. Stat. 1947, chap. 24, pars. 23-10 to 23-21, incl.) Yet the existence and powers of a municipal corporation are derived by it from the General Assembly. It has no inherent power. Legislation by a municipal corporation is valid only when it is authorized by statute, and statutes granting power to a municipal corporation are construed strictly against the municipality which claims the right to exercise the power. *City of Chicago* v. *Moore*, 351 Ill. 510.

A closer scrutiny of the ordinance under attack discloses that there are no other essential features there ordained, except the collection and payment into the general treasury of the city of the fees therein provided for and consent to the erection and maintenance of any poles and wires by the city council. No standards or specifications are prescribed. No inspection or supervision is required. No disposition is made of the fees to be paid thereunder, except that they be paid to the city clerk and presumably into the general fund of the city. The ordinance in no sense attempts to regulate. It is conceded no attempt was made to enforce it until 1948.

There can be no question that the city has power to regulate and also, with it, the power to license and to charge a license fee in connection with the exercise of the regulatory powers enumerated in the specific subsections of the Cities and Villages Act. (*Father Basil's Lodge, Inc.* v. *City of Chicago*, 393 Ill. 246.) But it is equally clear that in the exercise of the police power for the purpose of regulation the authority of a municipality is limited to such a charge for a license as will bear some reasonable relation to the additional burdens imposed upon the municipality by the business or occupation and the necessary

expense involved in police supervision. (*Ward Baking Co. v. City of Chicago,* 340 Ill. 212; *Wisconsin Telephone Co. v. City of Milwaukee,* 126 Wis. 1, 104 N.W. 1009.) But here the ordinance makes no attempt to regulate at all. The collection of revenue is the sole purpose for which the licenses are imposed, and such an ordinance, which exacts a license fee as a condition upon which a business or use or occupation may continue, is a tax measure. It is well settled that a municipality cannot, under the guise of an exercise of a police power, impose a license fee for revenue purposes. (*Lamere v. City of Chicago,* 391 Ill. 552.) Under the police power, license fees may not be imposed wholly for the purpose of obtaining revenue. *City of Chicago v. R. & X. Restaurant, Inc.,* 369 Ill. 65.

The city relies for its recovery upon *City of Peoria v. Postal Telegraph-Cable Co.* 274 Ill. 568, and *City of Springfield v. Postal Telegraph-Cable Co.* 253 Ill. 346. We said in *Village of Lombard v. Illinois Bell Telephone Co.* 405 Ill. 209, in which the village sought to recover under an ordinance which attempted to exact three per cent of the gross receipts of the defendant company for maintaining its equipment, and which case constitutes the last expression of this court on the subject, that the pole tax cases, such as the *City of Springfield* and *City of Peoria cases* "do not aid appellant, for the charges in such cases were justified as police or regulatory measures, or special charter provisions, which are not authority for the village of Lombard to enact a revenue ordinance under the guise or pretense that it constitutes a rental. There being no authority granted by the General Assembly to lease or let public streets for a rental based upon gross receipts *or otherwise,* [italics ours,] the village had no power to exact a rental charge for the use or permission to use the streets and alleys of the village of Lombard. No case from Illinois has been called to our attention authorizing a municipality to charge rent for its streets, and in other States such

power has been held to be nonexistent. [Citations.] The ordinance in question cannot be sustained as authority to collect rental for the use of a public street. The village is not acting as a proprietor demanding pay for the use of its property, but as a tax-levying body for revenue purposes." A licensing ordinance which does not regulate in any degree must be considered to be a revenue measure, and, unless the power to tax has been expressly conferred by the legislature, the ordinance is void. *Herb Bros.* v. *City of Alton,* 264 Ill. 628; *City of Bloomington* v. *Ramey,* 393 Ill. 467.

And we think it apparent on its face that this ordinance is unreasonable and excessive. In the *City of Peoria case,* above cited, we observed "Appellant did not in any plea make the averment that the ordinance was invalid because the license fee was in excess of the cost of issuing the license and of supervision and inspection of its poles and lines. The ordinance is presumed to be a valid ordinance, and the burden was upon appellant to allege and prove that the ordinance was unreasonable by reason of its providing for an excessive license fee, *unless it is so grossly excessive that the court can pronounce it unreasonable as a matter of law."* (Italics ours.) A like tax, if upheld, and imposed by every city through which the defendant companies carry their wires would result in putting the utilities out of business and they are as necessary to the operation of the modern city as a great many of the facilities performed by the municipality itself. A tax is a demand of sovereignty; a toll is a demand of proprietorship. On neither basis can the levies of the ordinance here in question be upheld.

Since the ordinance cannot be sustained, there is no further need to dwell upon the questions of uncertainty, discrimination, interstate commerce, remedy, acquiescence and estoppel, *laches* or the statutes of limitation.

We think the trial court was correct in refusing to grant leave to file the amended complaint. No amendment

under the admitted facts here could cure the ordinance or change the conclusion that it was for revenue only and, therefore, void and unenforceable against defendants. Allegations attempting to excuse or explain the reasons for delay or any attempt to show there was in fact some inspection and supervision of the facilities, thereby inferring some regulation by the city whether volunteered or otherwise, could not change the provisions of the ordinance as enacted and no other ordinance is alleged or claimed.

In addition to the fees and charges in the ordinance, the city, by its proffered amended complaint, also sought the maximum penalty of $200 for each offense, *i.e.,* for the failure to file on October 1, 1948, each statement for each year from October 1, 1919, to October 1, 1948, and the failure to pay on October 15, 1948, the license fees for each year from 1919 to 1948, and also $200 for *each day* after October 1, 1948, that each company failed to file each statement for each year from 1919 to 1948, and also $200 for *each day* after October 15, 1948, that it failed to pay the license fee for each year from 1919 to 1948. It is estimated by counsel these claimed penalties would exceed $120,000 for each defendant, making a total of $360,000, or a sum ten times greater than the penalties sought in the original complaint. As stated, we think the fees and charges of this ordinance, as shown on the face of the amended complaint, are such that the court properly could and did pronounce the terms thereof unreasonable and excessive as a matter of law. It follows, therefore, that no penalties whatever can be assessed thereunder.

For the reasons assigned, the orders and decrees of the superior court of Cook County, dismissing the complaints, are affirmed.

*Decrees affirmed.*