(No. 35089.—)

THE PEOPLE ex rel. Charles F. Carpentier, Secretary of State, Appellee, vs. ARTHUR MORGAN TRUCKING COMPANY, Appellant.

*Opinion filed March 20, 1959.*

DRACH AND TERRELL, of Springfield, (GEORGE E. DRACH, and RAYMOND L. TERRELL, of counsel) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, and BURTON BERKLEY, of counsel,) for appellee.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

This direct appeal, involving the revenue, is prosecuted by Arthur Morgan Trucking Company, a Missouri corporation, from a judgment of the circuit court of Sangamon County finding that it is indebted to the State of Illinois in the amount of $9,112.50 for 1952 motor vehicle fees and taxes pertaining to 17 trucks. When appellant applied for licenses in December, 1951, the Secretary of State had been enjoined from administering or enforcing certain amendments to the Motor Vehicle Act that were to become effective January 1, 1952, and, accordingly, appellant paid a $5 registration fee for each vehicle and $821.41 in privilege taxes computed under the act as it existed prior to amendment. The validity of the amendments having been subsequently established, (*Bode* v. *Barrett,* 412 Ill. 204,) the Secretary of State instituted this action to collect mileage taxes under rates established in such amendments. Cf. *People ex rel. Carpentier* v. *Lange,* 8 Ill.2d 437; *People ex rel. Carpentier* v. *Treloar Trucking Co.* 13 Ill.2d 596.

Appellant admits its liability for one vehicle, in the amount of $714, but denies liability for the balance on the ground that reciprocity statutes of Illinois and Missouri, and its compliance with the registration laws of Missouri, entitled it to operate the trucks in interstate commerce on Illinois highways without the need of Illinois plates or the payment of Illinois fees and taxes. Likewise, appellant admits making application for Illinois licenses and the partial payment of fees but contends that it did not thereby waive its rights under the reciprocity statutes for reason that the application and payment were made under duress and economic compulsion. On this appeal the State of Illinois does not controvert the claim that reciprocity existed, or that appellant was entitled to its benefits, but asserts that the Illinois applications were voluntarily made, without duress and under a mistake of law, therefore rendering

appellant liable to pay in full for the licensing privilege extended.

Generally speaking, taxes paid under a mistake of law and not made under duress cannot be recovered in the absence of a statutory provision for refund, (*People ex rel. City of Highland Park* v. *McKibbin,* 380 Ill. 447,) and it is also held that where a person voluntarily accepts the benefits of a statute, he will, as a general rule, thereafter be barred from challenging its validity, provided no question of public policy is involved; however, where one is incorrectly compelled to pay money under pressure of severe statutory penalties or to avoid disastrous effects to business, the payment is involuntary and the money paid may be recovered. (*People ex rel. Carpentier* v. *Treloar Trucking Co.* 13 Ill.2d 596; *Benzoline Motor Fuel Co.* v. *Bollinger,* 353 Ill. 600; *Chicago and Eastern Illinois Railway Co.* v. *Miller,* 309 Ill. 257.) When these principles are applied to the facts and contentions in this case, the initial question for determination becomes whether or not appellant's acceptance of the Illinois licensing provisions was voluntary or involuntary. The evidence on this issue is in conflict and although the trial court made no specific finding with reference thereto, this court may, on direct appeal, consider both errors of law and of fact. Ill. Rev. Stat. 1957, chap. 110, par. 92(3)(a) and (b); *Bradish* v. *Yocum,* 130 Ill. 386, 391.

Factual background discloses that for 1952 and many years prior thereto, appellant was a Missouri corporation having offices in St. Louis, Missouri. During such period appellant engaged in a trucking business limited to the hauling of heavy commodities, construction materials and equipment. It did not, in 1952 or in previous years, maintain any place of business in Illinois, although it did, in 1951 and 1952, operate 17 of its fleet of 125 trucks into Illinois for the purpose of hauling sand, rock and general contractor equipment from producing plants and quarries

in or near East St. Louis, Illinois, to construction sites in the St. Louis area of Missouri. Additionally, some contractor supplies were hauled from St. Louis to points in and around East St. Louis and, whether the cargoes originated in Illinois or Missouri, it is undisputed that all movements of the trucks were interstate. All of the 17 trucks used for the foregoing purposes were licensed by appellant in Missouri for 1952 and prior years as "local commercial vehicles," a classification under Missouri law which permitted travel within 25 miles from the limits of the city in which the vehicle was licensed, in this case St. Louis. Fred Johnson, an employee of the Illinois Secretary of State, who was called as an adverse witness by appellant, testified that it was his duty to determine matters of reciprocity in 1952, and stated that in such year Illinois recognized the Missouri local commercial licenses under the reciprocity statutes to the extent that Missouri vehicles bearing such license would be permitted to use in Illinois any balance of the 25-mile limitation upon them that had not been used up in Missouri operation. With the exception of one truck, which did make intrastate movements in Illinois and for which appellant admits liability, there is no evidence that any of the trucks involved operated in Illinois beyond the 25-mile limit to which reciprocity was given.

On several occasions during 1951 drivers of trucks displaying the Missouri local plates were arrested in Illinois for failure to have Illinois plates even though such trucks were operating in interstate commerce within the 25-mile limit. The arrests resulted in fines paid by appellant, as well as a disruption of business, and the situation prompted its vice-president, Arthur Morgan,, Jr., to visit the Illinois license bureau on December 18, 1951, for the purpose of discussing reciprocity as to the 25-mile plates. According to Morgan, he first spoke with John Hamdtmann and told the latter it was his understanding that the Missouri plates his company used would be recognized under reciprocity.

However, by Morgan's version, Hamdtmann advised him that Illinois would not recognize the Missouri local plates, and that appellant's drivers would be subject to arrest if Illinois plates were not obtained. Similar statements were attributed to Cal Gordon, then chief investigator of the motor division, to whom Morgan says he was referred by Hamdtmann. Morgan's testimony was corroborated in all respects by Alfred Gambill, the general manager of a large St. Louis drayage company, who was in Springfield to discuss a similar licensing problem and who testified he was present during the conversations of Morgan with Hamdtmann and Gordon. Several days later appellant made application for Illinois licenses on a mileage tax basis and its purpose, according to Morgan, was to prevent further arrests of its drivers. From such facts appellant concludes that its applications were made under duress of the threats of arrest, and under the economic compulsion of preventing injury and disruption to its business. It is true that appellant had a choice either to apply for Illinois plates or to do without and suffer the consequences of arrest and interference with its interstate business, but, as is observed in *People ex rel. Carpentier* v. *Treloar Trucking Co.* 13 Ill.2d 596, 600: "Conduct under duress always involves a choice, but this court has held that the making of a choice under such circumstances does not estop the person acting under duress from later asserting his rights."

As opposed to appellant's proof, however, Hamdtmann testified in behalf of the State, both directly and in rebuttal, that he did not know Morgan, that he had never had conversations with Morgan and Gambill nor advised them of the Illinois position on reciprocity, and that his first knowledge of appellant's applications came when he received them in the mail sometime between December 20, 1951, and January 8, 1952. The witness, who occupied the position of supervisor of the mileage tax division both in 1952 and at the time of the trial six years later, related that his duties

entailed advising truckers on the question of whether it would be necessary to obtain Illinois plates, and advising as to proper procedures in making application for plates. While he admitted that questions of reciprocity would arise, he testified that he administered the policy referring to reciprocity only if the operations of an applicant were intrastate and stated that if reciprocity questions arose concerning interstate operators, he would refer the applicant to the person in the department who handled such matters. When asked specifically if he had anything to do with administering the policy with reference to the Missouri local license, his reply was: "If we have—no. I don't believe we would license them if they had—you mean the 25 mile plate? We weren't supposed to; that is all I know, *whether or not I did, I don't know."* (Emphasis supplied.) Hamdtmann also testified his superiors had informed him that reciprocity would not be extended to the 25-mile plates but, almost immediately afterward, he said they had not given him such information, that he had read about the policy in a paper, and that it was too far back for him to remember either the paper or whether he had discussed the matter with his superiors.

Appellee, the Secretary of State, asserts that the question of the credibility of the opposing witnesses was one of fact, upon which it is to be presumed that the trial court found in favor of appellee's witness, and argues that the weight of the evidence supports a conclusion that appellant's applications were voluntarily made. It is our opinion, however, that the manifest weight is to the contrary. While Hamdtmann both denied and stated that he could not remember conversations with Morgan and Gambill some six years prior to trial, his own testimony establishes that he was the official whom truckers would consult for a ruling as to whether Illinois plates were needed, and that he was frequently confronted with problems of reciprocity. His testimony that he passed interstate questions to another

official lends credence to the testimony of Morgan and Gambill that Hamdtmann referred them to Cal Gordon, the chief investigator for the motor vehicle division. Conversely, we believe, his denials that he had conversations with appellant's witnesses, or that he had advised them concerning reciprocity, lose much of their force in face of his contradictions and uncertainties with regard to both his knowledge and the administration of the Illinois policy concerning the Missouri local license. On the state of the evidence, we cannot say that appellant's position has been overcome by the manifest weight of the evidence.

Speaking in *Benzoline Motor Fuel Co.* v. *Bollinger,* 353 Ill. 600, 607, this court has said that virtual or moral duress is sufficient to prevent a payment made under its influence from being voluntary, and that "Where such duress is exerted under circumstances not justified by law it need only be sufficient to influence the apprehensions and conduct of a prudent business man." Continuing, the opinion states: "If the duress is exerted by one clothed with official authority or who is exercising a public employment, less evidence of compulsion or pressure is required." Based upon these observations and upon analogies drawn from *People ex rel. Carpentier* v. *Treloar Trucking Co.* 13 Ill.2d 596, we think it clear that appellant's act of applying for Illinois licenses was entirely involuntary.

In the *Treloar case* a company made application for truck licenses in a weight classification of 24,000 to 30,000 pounds but it was refused by the Secretary of State who, with more justification than exists in the present case, told the company it could apply only for a classification of 24,000 to 41,000 pounds. To avoid statutory penalties for failure to have licenses, and because of the economic need to continue its trucking business, the company applied for licenses in the higher classification and paid a part of the fees. There, as here, a claim was made that the company waived its rights to the lower classification, even though it was the

proper classification, and the Secretary of State brought a suit for additional fees and taxes computed on the higher classification. This court held, however, that the company's application had been made under compulsion and duress and that its right to pay only for the lower classification had not been waived. Here appellant insisted that it needed no Illinois plates, but applied for them to avoid the penalty of arrests, both actual and threatened, and to prevent adverse economic effects upon its business. The situation in which appellant found itself is not unlike that of the taxpayer in *Chicago and Eastern Illinois Railway Co.* v. *Miller,* 309 Ill. 257. There a public utility contended that the Interstate Commerce Act was exclusive and plenary on questions relating to the issuance of stocks and bonds, and that a State law was in conflict therewith. As a result the utility was confronted with the situation of choosing either to make application to the Illinois Commerce Commission for approval of its securities and to pay the fees thereunder, or to refuse payment of fees and application for approval for which it would suffer statutory penalties and the revocation of its certificate to do business in the State. The utility chose the first course rather than suffer economic losses. Under the circumstances we held the action of the utility was not voluntary, but was conduct under duress which did not estop it from later asserting its rights. The same conclusion must be reached in the instant case, and we hold that appellant is not estopped from asserting its rights under the reciprocity statutes in this action.

Drawing upon decisions which hold that taxes voluntarily paid cannot be recovered, however meritorious the claim, if they were not paid under protest, (see: *LeFevre* v. *County of Lee,* 353 Ill. 30; *People ex rel. City of Highland Park* v. *McKibbin,* 380 Ill. 447,) and upon the provisions of the Illinois statute relating to payments under protest, (Ill. Rev. Stat. 1951, chap. 127, par. 172,) appellee contends the appellant should be required to pay the bal-

ance of the fees and taxes due because it failed to make its application for license under protest. While the authorities relied upon would be persuasive if this were a suit by appellant to recover the fees and taxes already paid, we have been given neither authority nor persuasive argument for their application to the case at hand. Indeed, the *Treloar case* expresses the opinion that protest is not necessary to the position of a defendant who was compelled to apply for a license that was neither wanted nor required by law. Inasmuch as the appellant was compelled to make its application under duress, it is our view, under the facts and circumstances peculiar to this case, that its failure to pay the license fees under protest does not now estop it from asserting its rights.

The judgment of the circuit court of Sangamon County is affirmed insofar as it relates to the one vehicle for which appellant admits its liability, but is reversed insofar as it finds liability for the remaining vehicles.

*Affirmed in part and reversed in part.*