(No. 49227.

R. HERBERT ROSS, Appellee, v. THE CITY OF GENEVA, Appellant.

*Opinion filed Jan. 27, 1978.—Rehearing denied March 30, 1978.*

28

MORAN, J., took no part.
UNDERWOOD, J., dissenting.

Ancel, Glink, Diamond & Murphy, of Chicago (Marvin J. Glink and John B. Murphy, of counsel), for appellant.

Reid, Ochsenschlager, Murphy and Hupp, of Aurora (Timothy J. Reuland, Charles F. Thompson, Jr., and William C. Murphy, of counsel), for appellee.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora (Peter K. Wilson, Jr., of counsel), for *amicus curiae* Geneva Chamber of Commerce.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, R. Herbert Ross, filed this action in the circuit court of Kane County against the defendant, the city of Geneva, "on behalf of himself and others similarly situated" seeking a declaratory judgment that certain of defendant's ordinances "be declared unlawful, invalid, void and beyond the [defendant's] statutory authority *** and in violation of Plaintiffs' [constitutional] rights," the

recovery of money paid defendant under the provisions of the allegedly invalid ordinances, and other relief. The circuit court held the ordinances invalid, enjoined defendant from further collections thereunder and entered judgment in favor of plaintiff in the amount of $1,154. It held that the case could not be brought as a class action. Plaintiff appealed from that portion of the judgment holding that the cause was not properly brought as a class action, and defendant cross-appealed. The appellate court affirmed the judgment insofar as it held the ordinances invalid and enjoined further collections thereunder, but reversed the denial of the class action. (43 Ill. App. 3d 976.) We allowed defendant's petition for leave to appeal. The facts are adequately stated, and the provisions of the ordinances are set forth in the opinion of the appellate court, and will be repeated only to the extent necessary to discuss the issues.

As authorized by division 117 of article 11 of the Illinois Municipal Code (Ill. Rev. Stat. 1961, ch. 24, par. 11–117–1 *et seq.*) defendant supplies electricity as a public utility. Under ordinances effective January 18, 1960, defendant established a commercial electric rate (Ordinance 60–1) and created a "Special Parking Improvement and Facilities Fund" (Ordinance 60–2). Ordinance 60–2 imposed a 10% surcharge on the electric bill of each commercial user and earmarked that surcharge for the parking fund to "be used for the purpose of acquiring parking facilities and improvements and the improvements and maintenance of present parking facilities and parking improvements." These same provisions were included in defendant's Municipal Code adopted May 7, 1962. On June 22, 1973, for the first time, the 10% surcharge was specifically shown on commercial users' bills and noted as a "misc." charge. Immediately upon receiving his June 22 bill, plaintiff made inquiry and objected to the surcharge. This action was filed on July 19, 1973. He paid the

surcharge portion separately and indicated on the check that the payment was made under protest. Both the circuit and appellate courts held that there was no statutory authority for the imposition of the surcharge and that the provisions of the ordinances were invalid.

Contending that the ordinances were within the powers granted by the General Assembly, defendant argues that under the provisions of section 11—117—12 of the Illinois Municipal Code it may structure its charges for utility services to produce a profit and may use that profit to defray the general cost of government. It argues that pursuant to section 11—71—1 of the Illinois Municipal Code, it had authority to finance parking facilities in the manner provided by Ordinance 60—2, and may use "particular methods of funding in certain situations described by the State legislature."

Defendant is not a home-rule unit (Ill. Const. 1970, art. VII, sec. 6) and is subject to the rule that the "powers of a municipal corporation are derived by it from the General Assembly. It has no inherent power. Legislation by a municipal corporation is valid only when it is authorized by statute, and statutes granting power to a municipal corporation are construed strictly against the municipality which claims the right to exercise the power. *City of Chicago v. Moore,* 351 Ill. 510." (*City of Chicago Heights v. Western Union Telegraph Co.,* 406 Ill. 428, 433.) Defendant's authority to operate a public utility was granted it by section 11—117—1 of the Illinois Municipal Code, and its power to fix charges for the services provided was conferred by section 11—117—12, which in pertinent part provided:

> "Sec. 11—117—12. The charges fixed for the product supplied or the service rendered by any municipality shall be sufficient at least to bear all of maintenance and operation, to meet interest charges on the bonds and certificates issued on account thereof, and to permit the

accumulation of a surplus or sinking fund to meet all unpaid bonds or certificates at maturity." (Ill. Rev. Stat. 1961, ch. 24, par. 11–117–12.)

Its powers concerning the financing for the acquisition and maintenance of off-street parking facilities were conferred by division 71 of article 11 of the Illinois Municipal Code (ch. 24, par. 11–71–1 *et seq.*), which, with respect to financing, provided:

"Any municipality is hereby authorized to:
* * *

(e) Finance the acquisition, construction, maintenance and/or operation of such parking facilities by means of general tax funds, special assessments, special taxation, revenue bonds, parking fees, special charges, rents or by any combination of such methods; * * *." (Ill. Rev. Stat. 1963, ch. 24, par. 11–71–1.)

Defendant argues that the provisions of section 11–71–1(e) are "merely a grant of power rather than a limitation" and that the "absence of limiting language" in this and other sections cited authorizes it to operate its utility at a profit, use the profit to meet the general expenses of government, and that the ownership and operation of parking lots is a legitimate corporate purpose for which such profits may be expended.

We have considered the many issues raised and argued by the parties and conclude that it is not necessary to further discuss most of them. This record does not present the question whether defendant may operate a utility at a profit and expend the profits for general corporate purposes; it presents the very narrow question whether, within the ambit of the relevant statutes, defendant was authorized to levy a surcharge on commercial users of the electric services provided by its utility and use those funds for the construction and maintenance of parking lots. Ordinance 60–2, either as originally enacted or as presently codified, makes no reference to profits of the utility; the surcharge, as noted by the appellate court, is to be

deposited in the Special Parking Improvement and Facilities Fund and used for the purpose of acquiring parking facilities and improvements without regard to whether profits are derived from the utility operations. We have examined the many cases cited by defendant and do not discuss them for the reason that they are not relevant to the question presented. We agree with the appellate and the circuit courts that under the statutes defendant was not empowered to assess the surcharge on commercial users for the purpose provided in the ordinances and that the ordinances are therefore invalid. Because we have concluded that defendant was without statutory authority to enact the ordinances, we do not consider the constitutional issues raised by the parties.

We consider next defendant's contention that plaintiff's payments of the surcharge were voluntarily made and may not be recovered in this action. It is not disputed that any payment made by plaintiff subsequent to becoming aware of the existence of the surcharge was made "under protest." The record shows that it was defendant's policy to terminate service to users in the event of nonpayment of imposed charges and that in many instances such service had in fact been terminated. It is also apparent that there was no statutory procedure for the payment under protest. In *Allison Co. v. Village of Dolton,* 24 Ill. 2d 233, plaintiff sought to recover money allegedly paid under duress to the defendant village for license and inspection fees under an ordinance which plaintiff alleged was either invalid or inapplicable to him. Relying upon *Benzoline Motor Fuel Co. v. Bollinger,* 353 Ill. 600, and *People ex rel. Carpentier v. Arthur Morgan Trucking Co.,* 16 Ill. 2d 313, the court held that payments made to avoid "disastrous effects to business" were involuntary and that the money thus paid could be recovered. Confronted with the choice of payment of the surcharge or termination of service, plaintiff, in making the payment, acted with prudence and

is not barred from recovery of the sums paid.

Defendant contends next that "plaintiff and all members of his class are guilty of laches" and are precluded from recovering moneys paid under the ordinances. It points out that the ordinances in question were originally proposed and debated in 1959 and enacted in 1960. It argues that plaintiff had "constructive knowledge" of the existence of the ordinance, that the applicable test is not what plaintiff knew, but what he might have known by the use of means of information within his reach and in the exercise of the vigilance required of him by law. In *Slatin's Properties, Inc. v. Hassler,* 53 Ill. 2d 325, the court, relying upon *Pyle v. Ferrell,* 12 Ill. 2d 547, set forth the requirements for the application of *laches* in bar of an action. (53 Ill. 2d 325, 330.) The record shows that plaintiff filed this action within 30 days of learning of the surcharge, and there is no showing that defendant is prejudiced by the fact that the ordinance was not attacked until 13 years after its enactment. We hold that *laches* does not bar plaintiff's action.

We consider next defendant's contention that the appellate court erred in its reversal of the circuit court and in holding that this suit could be maintained as a class action. It argues that the question of voluntary payment is a "dominant and pervasive issue in the present case which requires individual determinations that cannot be decided in a class action" and that the appellate court, in effect, has made a classwide determination of that issue. We do not agree. We need not review here the comprehensive discussion contained in the opinion of the appellate court on this question. Public Act 80—809, effective October 1, 1977, provides:

> "(a) An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." (Ill. Rev. Stat. 1977, ch. 110, par. 57.2.)

As we said in *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 337-38, a "community of interest" of both the subject matter and the relief sought is not requisite to a class action. The question of law common to the class and which predominates "over any questions affecting only individual members" is the question of the validity of the ordinance. The fact that some members of the class may not seek relief because of some factor peculiar to them does not serve to bar the class action. (*Rosen v. Village of Downers Grove*, 19 Ill. 2d 448, 456.) Defendant argues that plaintiff has a conflict of interest with other members of the class because certain of its members have chosen to permit defendant to retain the moneys paid under the surcharge. Obviously this is irrelevant to the question whether the ordinance was valid, and the success of the action to date leaves little question that plaintiff "will fairly and adequately protect the interest of the class." In *Steinberg* we said:

"In those cases where certain questions peculiar to some but not all members of the class arise, various procedures may be employed.

\* \* \*

An Illinois court determining that an essential element of the proof is common to only certain members of the class could order separate trials on that particular issue. (Ill. Rev. Stat. 1975, ch. 110, par. 23.) Or the class could be broken into various subclasses, as the Federal decisions point out. The class action, however, is

not to be dismissed because of these differences in elements of proof between members of the class." *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 341-42.

*Amicus curiae,* the Geneva Chamber of Commerce, argues that the decision of the appellate court on the question of plaintiff's representation of a purported class should be reversed and plaintiff's appeal on that issue dismissed for lack of an appealable interest. It argues that because plaintiff has obtained a judgment for such sums as he is entitled to recover from defendant, he no longer has standing to represent the class. This contention was not made by defendant at any time and appears to have been raised for the first time in this court and will not be further considered. We hold that the appellate court did not err in its reversal of the circuit court on this question.

For the reasons set forth the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.

MR. JUSTICE UNDERWOOD, dissenting:

I agree with the majority that this case "presents the very narrow question whether, within the ambit of the relevant statutes, defendant was authorized to levy a surcharge on commercial users of the electric services provided by its utility and use those funds for the construction and maintenance of parking lots." (71 Ill. 2d at 32.) Yet the court states only its conclusion regarding this question; it neither adopts the reasoning of the appellate court invalidating the ordinance nor explains its own rationale. An ordinance is presumed valid and reasonable, and the attacking party has the burden of showing otherwise. (*City of Chicago Heights v. Western Union Telegraph Co.* (1950), 406 Ill. 428, 432.) The city of

Geneva and other Illinois municipalities deserve a more detailed explanation than the majority gives of the shortcomings of this ordinance.

While I am not nearly so certain as my colleagues appear to be that the city could not do as it did here, I am entirely certain that recovery ought not to be permitted for the 13 years during which plaintiff sat by and permitted the city to collect and expend this money. The ordinance imposing this surcharge was publicly debated, passed and published in the local newspapers. Plaintiffs are charged with knowledge of that which may be obtained from public records, and they have constructive notice of the ordinances of their city. (*Haas v. Commissioners of Lincoln Park* (1930), 339 Ill. 491, 498; see *DuMond v. City of Mattoon* (1965), 60 Ill. App. 2d 83, 87.) This court said in *Pyle v. Ferrell*:

> "These matters were all of public record, and although appellant claims not to have had notice of any of these matters adverse to his ownership, such public records served as constructive notice to him where, as here, the adverse claimant was not guilty of any affirmative act of deception to prevent suspicion and inquiry. (See: *Potts v. Alexander,* 118 Fed. 885; *Briggs v. Buzzell,* 164 Minn. 116, 204 N.W. 548.) *The test is not what the appellant knows, but what he might have known by the use of the means of information within his reach with the vigilance the law requires of him.*" (Emphasis added.) (12 Ill. 2d 547, 554.)

There is no evidence that the city affirmatively deceived plaintiff Ross or any other customer. City personnel were always available during the entire period to explain or itemize an electric bill and did in fact explain the surcharge to many commercial customers. Copies of the commercial rate were readily available. To say as does the majority

that "there is no showing that defendant is prejudiced by the fact that the ordinance was not attacked until 13 years after its enactment" (71 Ill. 2d at 34) is simply evading contact with reality. Of course the city is prejudiced. How could it not be? For 13 years without a challenge it collected and expended this revenue to provide adequate parking facilities from which plaintiff Ross and the entire community have benefitted. Had timely complaint been made and upheld, any defects in the ordinance could have been supplied or alternative sources of revenue explored. Thirteen years would not have been irrevocably lost.

I cannot join the opinion of the court.