2022 IL App (1st) 200957

SIXTH DIVISION
March 31, 2022

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-20-0957

| | | |
|---|---|---|
| ALEC PINKSTON, Individually and on Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) ) | Cook County. |
| v. | ) ) | No. 19 CH 12364 |
| THE CITY OF CHICAGO, | ) ) ) | Honorable Caroline K. Moreland, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justice Harris concurred with the judgment and opinion.
Justice Oden Johnson dissented, with opinion.

**OPINION**

¶ 1    Plaintiff Alec Pinkston filed a class action complaint alleging that the City of Chicago

(City) has an ongoing practice of improperly issuing central business district metered parking

tickets. Mr. Pinkston alleged that the City routinely issues these tickets, for which there is a higher

penalty than ordinary metered parking tickets, outside of the boundaries of the central business

district established by the Chicago Municipal Code (Municipal Code). On behalf of himself and a

class of similarly situated individuals, Mr. Pinkston sought a declaration that the tickets were void,

an injunction to halt the practice, and the disgorgement of parking fees and the interest charged on

those fees as a remedy for the City's unjust enrichment. The City successfully moved to dismiss

the complaint pursuant to section 2-619 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619 (West 2018)), on the grounds that Mr. Pinkston had failed to exhaust his administrative remedies with the City's Department of Administrative Hearings (DOAH) before initiating this action in the circuit court.

¶ 2      On appeal, Mr. Pinkston maintains that several exceptions to the exhaustion doctrine apply and should have prevented dismissal of his claims. He argues that (1) the ticket he received was void, both because the City lacked statutory authority to issue it and because it was invalid on its face; (2) it would have been futile to challenge his ticket with DOAH; (3) resolution of his claims required no fact finding or agency expertise; (4) availing himself of the administrative process would have resulted in irreparable injury; and (5) DOAH could not have provided him the "ultimate relief" he sought.

¶ 3      Although we agree with the City that the first four of these exceptions do not apply, we are persuaded that the last one does. We accept, for purposes of this motion to dismiss, Mr. Pinkston's argument that DOAH, which is tasked by the Municipal Code with establishing liability or nonliability for individual parking violations, cannot provide him with the core relief he seeks— injunctive and monetary relief to prospectively and retroactively redress the deleterious effects of the City's purportedly widespread practice of issuing erroneous central business district tickets. We reverse the circuit court's dismissal of Mr. Pinkston's complaint and remand for further proceedings on his claims.

¶ 4                                I. BACKGROUND

¶ 5      The City of Chicago regulates metered parking spaces within its boundaries. A failure to comply with parking meter regulations outside the central business district results in a $50 fine. Chicago Municipal Code § 9-64-190(a) (amended Nov. 16, 2016); Chicago Municipal Code 9-

100-020(b) (amended Apr. 21, 2021). Within the central business district, the same violation resulted—at the time Mr. Pinkston's ticket was issued—in a $65 fine. Chicago Municipal Code § 9-64-190(b) (amended Nov. 16, 2016); Chicago Municipal Code § 9-100-020(b) (amended at Chi. City Clerk J. Proc. 38042 (Nov. 16, 2016)). That penalty has since been raised to $70, with no corresponding increase for violations outside of the district. Chicago Municipal Code § 9-100-020(b) (amended April 21, 2021)).

¶ 6    As defined in section 9-4-010 of the Municipal Code, the central business district is the area

> "beginning at the easternmost point of Division Street extended to Lake Michigan; then west on Division Street to LaSalle Street; then south on LaSalle Street to Chicago Avenue; then west on Chicago Avenue to Halsted Street; then south on Halsted Street to Roosevelt Road; then east on Roosevelt Road to its easternmost point extended to Lake Michigan"

and includes parking spaces on both sides of the above-mentioned streets. Chicago Municipal Code § 9-4-010 (amended July 21, 2021).

¶ 7    In his class action complaint, Mr. Pinkston alleged that on May 21, 2019, he parked his vehicle in a parking meter zone located at or near 1216 South Wabash Avenue in Chicago. Mr. Pinkston returned to his vehicle to find that he had received a ticket, purporting to be pursuant to section 9-64-190(b) of the Municipal Code, for having an expired parking meter within the central business district. The ticket stated that Mr. Pinkston's vehicle was parked at 1202 South Wabash Avenue. Both 1216 South Wabash Avenue and 1202 South Wabash Avenue are located south of Roosevelt Road and thus outside the southernmost boundary of the central business district. Mr. Pinkston alleged that he paid the $65 fine associated with his ticket "under duress."

¶ 8    Citing a May 14, 2019, news article analyzing data concerning parking tickets issued by

3

the City, Mr. Pinkston alleged that over a five-year period the City had issued more than 30,000 central business district tickets for vehicles, like his, that were parked outside of the central business district. Mr. Pinkston alleged that the City was thus engaged in a "routine practice" of erroneously issuing such tickets.

¶ 9     On behalf of himself and a proposed class of similarly situated individuals, Mr. Pinkston asserted three counts against the City, seeking (1) a declaration that the improperly issued tickets were facially invalid, void, and unenforceable; (2) an injunction to prevent the City from continuing to issue central business district tickets to vehicles parked outside the district; and (3) as a remedy for unjust enrichment, the repayment of fines, penalties, and interest the City had unjustly received and retained at the expense of class members.

¶ 10    The City moved to dismiss Mr. Pinkston's complaint pursuant to section 2-619 of the Civil Code (735 ILCS 5/2-619 (West 2018)), arguing that the circuit court lacked subject matter jurisdiction because Mr. Pinkston had failed to exhaust his administrative remedies before filing suit. According to the City, the parking ticket issued to Mr. Pinkston was subject to administrative review by DOAH and, under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)), he was required to seek a finding of no liability by first challenging the ticket with DOAH and then filing a complaint for administrative review in the circuit court if DOAH rejected his challenge. Because Mr. Pinkston filed his complaint outside of this administrative review process, the City maintained that his claims were barred by the administrative exhaustion of remedies doctrine. The City argued in the alternative that Mr. Pinkston's claims were barred by the voluntary payment doctrine, as he had also elected to pay his ticket before contesting it.

¶ 11    In response to the City's motion, Mr. Pinkston argued that "many exceptions" to the exhaustion doctrine applied. He maintained that he had no obligation to pursue administrative

4

remedies, for example, before challenging a facially invalid and therefore void ticket that the City was not statutorily authorized to issue. Mr. Pinkston further argued that administrative proceedings could not have provided him with adequate relief because only a court can issue an injunction against the City's continued issuance of erroneous central business district metered parking tickets. Mr. Pinkston also insisted that administrative proceedings would have been futile because the City's failure to withdraw his erroneous ticket of its own accord indicated that any challenge made to the ticket "would certainly be denied by [a DOAH] hearing officer." Finally, Mr. Pinkston argued that no fact-finding was required because the location of his vehicle relative to the boundaries of the central business district was not disputed and there was thus "no need for the expertise of the City's DOAH in this matter." Mr. Pinkston maintained, consistent with his allegations, that he had not voluntarily paid the $65 penalty associated with his ticket but had been compelled to do so to avoid late fees, immobilization of his vehicle, suspension of his driver's license, and other potential consequences.

¶ 12   The circuit court granted the City's motion in its entirety and dismissed Mr. Pinkston's claims with prejudice, concluding that Mr. Pinkston had failed to exhaust his administrative remedies and that none of the enumerated exceptions to the exhaustion doctrine applied. The court rejected Mr. Pinkston's argument that the City lacked authority or jurisdiction to issue the ticket he received and that the ticket was thus void *ab initio*. The court explained that although the ticket may have been "issued for a violation that could not factually be proven," it was not void because the City was authorized to issue tickets for parking violations. The court noted that Mr. Pinkston had failed to plead any facts showing it would have been futile to contest his ticket with DOAH. And the court rejected "the notion that all parties who receive parking tickets in the city of Chicago can avoid administrative review because no agency expertise is involved." Accepting that

proposition, in the court's view, "would eviscerate the concept of administrative hearings and administrative review for truly trivial matters and bombard the Court with litigation over parking and other related fines."

¶ 13 Finding that "a factual question remained as to whether [Mr. Pinkston's] payment of the parking ticket was truly voluntary," the court did not base its dismissal on application of the voluntary payment doctrine.

¶ 14 This appeal followed.

¶ 15                           II. JURISDICTION

¶ 16 The circuit court granted the City's motion to dismiss Mr. Pinkston's complaint with prejudice on September 4, 2020, and Mr. Pinkston filed a timely notice of appeal from that order on September 9, 2020. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 17                           III. ANALYSIS

¶ 18 The circuit court dismissed Mr. Pinkston's complaint under section 2–619(a) of the Civil Code (735 ILCS 5/2-619(a) (West 2018)). A motion brought pursuant to this section "admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). Our review of the grant or denial of such a motion is *de novo*. *Id*. at 116.

¶ 19                              A. The Exhaustion Doctrine

¶ 20    The circuit court agreed with the City that Mr. Pinkston's claims were barred because he failed to exhaust his administrative remedies. The exhaustion doctrine provides that a party aggrieved by actions that are subject to review by an administrative agency generally cannot seek review in the courts outside of the administrative review process, which assigns courts the limited role of reviewing final agency decisions. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989). Reasons for this requirement include allowing the administrative agency to fully develop and consider the facts surrounding matters presented to it and to apply agency expertise to such matters, as well as the possibility that the complaining party might succeed before the agency, thus obviating the need for judicial review and conserving valuable judicial resources. *Id.*

¶ 21    Although strict compliance is generally required, our supreme court has recognized a number of exceptions to the exhaustion doctrine, including when (1) "a statute, ordinance, or rule is attacked as unconstitutional on its face"; (2) "multiple administrative remedies exist and at least one is exhausted"; (3) "the agency cannot provide an adequate remedy"; (4) "it is patently futile to seek relief before the agency"; (5) "no issues of fact are presented or agency expertise is not involved"; (6) "irreparable harm will result from further pursuit of administrative remedies"; or (7) "the agency's jurisdiction is attacked because it is not authorized by statute." *Id.* at 308-09.

¶ 22    Mr. Pinkston contends that several of these exceptions apply to his claims. He argues that (1) the ticket he received was void, both because the City lacked statutory authority to issue it and because it was invalid on its face, (2) it would have been futile to challenge his ticket with DOAH, (3) resolution of his claims required no factfinding or agency expertise, (4) availing himself of the administrative process would have resulted in irreparable injury, and (5) DOAH could not provide Mr. Pinkston with an injunction, the "ultimate relief" he sought.

¶ 23    As noted above, we agree with Mr. Pinkston that the last of these exceptions applies. However, because our view that this exception applies is dependent on Mr. Pinkston's ability to prove his allegation of a "routine practice" of issuing central business district tickets for vehicles, like his, that were parked outside of the central business district, we also want to make clear that none of the other exceptions that he cites are applicable. We address each of these exceptions in turn.

¶ 24                1. Lack of Agency Authority/Jurisdiction

¶ 25    Mr. Pinkston first argues that he was not required to exhaust his administrative remedies because he was challenging the City's authority to issue that ticket and thus he was alleging that the ticket was void. It is true that "[a]n administrative agency's powers are limited to those granted by the legislature and any action taken by an agency must be authorized specifically by statute." *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 16. "Because agency action for which there is no statutory authority is void, it is subject to attack at any time in any court, either directly or collaterally." *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160, 166 (2002). Although "the term 'jurisdiction' is not strictly applicable" in this context, "the rules concerning the authority of an administrative agency and the validity of its orders have been held to be analogous to those governing courts of limited jurisdiction." *In re Abandonment of Wells Located in Illinois by Leavell*, 343 Ill. App. 3d 303, 306 (2003). Mr. Pinkston's position is that, because no statute specifically authorizes the City to issue central business district parking tickets outside of the central business district, each instance of the City erroneously doing so is a void act for which the City lacked statutory authority.

¶ 26    The City maintains that this exception is inapplicable because Mr. Pinkston's argument goes to the authority of the City, not the authority of DOAH, and the City is "neither an

administrative agency nor a creature of statute," but is rather a home rule municipality with broad police powers. See Ill. Const. 1970, art. VII, § 6(a) (providing that a home rule municipality may "exercise any power and perform any function pertaining to its government and affairs"). Mr. Pinkston's response to this is that "in issuing and enforcing parking tickets, the City acts in an administrative capacity, and, for all intents and purposes applicable to this case, is an administrative agency."

¶ 27    We agree with the City on this point. Although the validity of parking tickets must be raised with DOAH, an administrative agency that was created by the City to adjudicate administrative hearings, the tickets are issued by the City itself, in the exercise of its police power.

¶ 28    Even if we were persuaded by Mr. Pinkston's contention that the City functions as an administrative agency when it issues parking tickets, however, his argument that the City acted outside of its statutory authority would fail. Section 11-208 of the Illinois Vehicle Code, titled "Powers of local authorities," provides, with certain exceptions not applicable here, that local authorities may, as part of "the reasonable exercise of [their] police power[,] *** [r]egulat[e] the standing or parking of vehicles." 625 ILCS 5/11-208(a)(1) (West 2020). Section 9-64-220(b) of the Municipal Code further provides that a police officer or other designated representative of the City who observes a parking violation "may issue a parking violation notice and serve the notice on the owner of the vehicle by handing it to the operator of the vehicle, if he is present, or by affixing it to the vehicle in a conspicuous place." Chicago Municipal Code § 9-64-220(b) (amended Nov. 16, 2016).

¶ 29    As even the authorities Mr. Pinkston relies on make clear, "[a]n administrative agency *** has authority to act if it has the following: (1) personal jurisdiction over the parties ***, (2) subject matter jurisdiction over the general class of cases to which the particular case belongs, and (3) the

9

inherent statutory authority to make or enter the particular order involved." *In re Abandonment of Wells Located in Illinois*, 343 Ill. App. 3d at 306. When it issued Mr. Pinkston's ticket, the City clearly had personal jurisdiction over him as an individual who parked his vehicle within city boundaries; the City had subject matter jurisdiction over parking violations; the general class of cases to which this particular case belongs; and the City also had the inherent statutory authority to issue tickets for expired parking meter violations, whether those violations occurred within the central business district or not. Thus, even if it was issued *in error*—and even, as Mr. Pinkston argues, if that error was obvious from the face of the ticket because it purported to be for a parking violation within the central business district while at the same time providing an address outside of the district—the City plainly had *authority* to issue the ticket. In other words, the ticket was not "void" but merely "voidable."

¶ 30    We discussed the difference between actions that are void and voidable in *Board of Education of the City of Chicago v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund of Chicago*, 395 Ill. App. 3d 735 (2009). We acknowledged in that case that, "theoretically, anytime an agency makes an erroneous decision, it acts without statutory authority because the legislature and the statutes do not give an agency the power to make erroneous decisions." (Internal quotation marks omitted.) *Id.* at 740. But we went on to explain that a rule finding a lack of agency authority in such cases would "disregard the distinction between agency orders which are void and subject to collateral attack, and those which are merely voidable and subject to attack only through the applicable administrative and judicial review proceedings." (Internal quotation marks omitted.) *Id.* at 741. The agency action at issue in *Board of Education*, the erroneous calculation of teacher pensions, was voidable, not void, because the agency did indeed have statutory authority to calculate pensions. *Id.* The same is true here, where the City

undoubtedly has the authority to issue tickets for expired parking meter violations.

¶ 31    Other cases Mr. Pinkston relies on do not convince us otherwise. In *1550 MP Road LLC v. Teamsters Local Union No.* 700, 2019 IL 123046, ¶ 28, our supreme court held that a contract entered into by a labor union was unenforceable where the union had failed, as a condition of its authority, to obtain its members' approval prior to entering into the agreement. Mr. Pinkston points to no similar condition that must be satisfied before the City is authorized to issue parking tickets. The other cases Mr. Pinkston relies on, *Space Station 2001, Inc. v. Moses*, 118 Ill. App. 3d 658, 663 (1983), and *Ganley v. City of Chicago*, 18 Ill. App. 3d 248, 254 (1974), both involved the illegal issuance of building permits by a ministerial officer. The question in those cases was whether the agencies the employees worked for were equitably estopped from relying on the illegality of the permits to later revoke them. We held that they were not. *Space Station 2001*, 118 Ill. App. 3d at 663; *Ganley*, 18 Ill. App. 3d at 254. Although we remarked in those cases that a building permit granted in violation of the terms of a zoning ordinance is a "nullity" (*Space Station 2001*, 118 Ill. App. 3d at 663; *Ganley*, 18 Ill. App. 3d at 254), Mr. Pinkston reads too much into this use of the word. As our supreme court has noted, the terms "void" and "nullity" have sometimes been used too loosely, causing the court to repeatedly clarify the important distinction between void decisions and decisions that are merely voidable because they are incorrect. See, *e.g.*, *People v. Castleberry*, 2015 IL 116916, ¶¶ 1, 14, 19 (abolishing the "void sentence rule" and explaining that criminal sentences that do not conform to statutory requirements are not void but merely voidable); *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998) (noting that the "question whether a judgment is void or voidable depends on whether the court entering the challenged order possessed jurisdiction over the parties and the subject matter").

¶ 32    As an apparent corollary to his voidness argument, Mr. Pinkston argues that he was denied

11

due process. The City contends that he has forfeited this argument by raising it for the first time on appeal. See *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 (noting that "[g]enerally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal"). Forfeiture aside, however, this argument also fails. "In the context of administrative hearings, due process of law specifically requires a definite charge, adequate notice, and a full and impartial hearing." *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2017 IL 117720, ¶ 34. Mr. Pinkston insists that his ticket failed "to specify the particular act and violation allegedly committed." As discussed above, however, the ticket plainly stated that it was for an expired meter within the central business district. That the violation as stated may have been unsupported by the facts provided a reason to challenge the ticket. But Mr. Pinkston was certainly put on notice of the particular violation the City alleged he had committed.

¶ 33    Because the issuance of tickets by the City falls within its police powers and is not the action of an administrative agency and because Mr. Pinkston's allegations, if true, would establish that his parking ticket was voidable but not void, the exception to the exhaustion doctrine for challenges to void orders issued without agency authority does not apply.

¶ 34                    2. Futility of Engaging in Agency Proceedings

¶ 35    Mr. Pinkston also argues that it would have been futile for him to challenge his ticket administratively. In support of this argument, he cites section 9-100-030(c) of the Municipal Code, which states that the City "shall withdraw a violation notice when said notice fails to establish a *prima facie* case" of a parking, standing, or compliance violation. Chicago Municipal Code § 9-100-030(c) (amended Apr. 24, 2020). A *prima facie* case of a violation is established when the parking ticket specifies, as required by section 11-208.3(b)(2) of the Vehicle Code, "the date, time, and place" of the violation; "the particular regulation violated; any requirement to complete a

traffic education program; the fine and any penalty that may be assessed \*\*\*; the vehicle make or a photograph of the vehicle; the state registration number of the vehicle; and the identification number of the person issuing the notice." 625 ILCS 5/11-208.3(b)(2) (West 2020). The accuracy of these facts must also be certified by the signature of the ticketing agent. *Id.* § 11-208.3(b)(3).

¶ 1    Mr. Pinkston argues the ticket he was issued did not establish a *prima facie* case of a parking violation because the facts stated on the ticket (an address outside the central business district) were in conflict with the violation asserted (an expired parking meter within the district). His position is that, under section 9-100-030(c) of the Municipal Code, the City is required to evaluate its tickets and—whether or not the vehicle owner has taken any action to formally challenge the ticket on this basis—to *sua sponte* withdraw a ticket if it contains such a discrepancy. The fact that the City did not independently withdraw his ticket in this manner, Mr. Pinkston insists, demonstrates that "the City maintains that [his ticket] was proper" and that there is thus "substantial reason to believe that any administrative challenge to [the ticket] would have been denied." While it is true that we do not require a party to exhaust his administrative remedies when it would be patently useless to do so, *Beahringer v. Page*, 204 Ill. 2d 363, 378 (2003), this exception is wholly inapplicable here.

¶ 36    We agree with the City that neither the City nor the DOAH hearing officers had any obligation to *sua sponte* withdraw or dismiss a ticket because the address on the ticket was not within the central business district. Mr. Pinkston never raised this defense and there is no reason for assuming that, if he had, it would have been rejected.

¶ 37    The single case Mr. Pinkston cites in support of his futility argument, *Oak Park Trust & Savings Bank v. Village of Palos Park*, 106 Ill. App. 3d 394 (1982), is readily distinguishable. We held that the plaintiff in that case was not required to resubmit a building plan with a new sewage

treatment system for approval before filing suit where the village's mayor had made clear that the problem the new system was designed to resolve was " 'peripheral' " and the chairman of the village's planning commission "would remain opposed to the plan even if engineering problems were solved." *Id.* at 407. Here, Mr. Pinkston points to no statement by the City or DOAH indicating that the results of challenges to erroneously issued central business district tickets brought before DOAH are similarly preordained.

¶ 38    Notably, Mr. Pinkston revealed in his reply brief, based on documents obtained after the complaint was filed, that he *did* in fact challenge his central business district parking ticket with DOAH. We granted his unopposed motion to take judicial notice of certain documents relating to those proceedings. These documents indicate that Mr. Pinkston contested his ticket solely on the basis that he paid the meter via the ParkChicago payment app and that somehow his payment became associated with a Minnesota license plate rather than with the Illinois license plate affixed to his vehicle. Noting that Mr. Pinkston had submitted no evidence explaining why a Minnesota license plate appeared on his receipt, DOAH ultimately determined that he was liable for the $65 fine associated with the ticket. Mr. Pinkston's position is apparently that when a ticket is brought to DOAH's attention for any reason, DOAH's finding of liability should be taken as evidence that the agency considered and rejected all possible challenges that were or could have been brought to the ticket's issuance. We disagree. The fact that Mr. Pinkston unsuccessfully challenged his ticket on wholly unrelated grounds is no indication that the process would have been futile as a means of challenging the *location* of his parking violation, had he deigned to make that specific argument. If anything, it demonstrates that the appropriate mechanism for such a challenge was known and accessible to Mr. Pinkston. He simply chose not to avail himself of it.

¶ 39    The exception to the exhaustion doctrine for challenges that would be patently useless to

pursue before an administrative agency also has no application here.

¶ 40                    3. Lack of Any Question of Fact or Issue Calling For Agency Expertise

¶ 41    Mr. Pinkston next argues that the policy considerations underlying the exhaustion doctrine do not apply here, where resolution of his claims turns on a purely legal question of statutory interpretation and not on questions of fact or matters calling for agency expertise. In support of this argument, he relies on this court's decision in *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 1. The plaintiff in that case received an automated speed enforcement (ASE) ticket for speeding in the vicinity of a school. Although by statute the City could utilize ASE cameras to issue tickets only on school days, the court concluded that a weekday during the summer qualified as such because special needs students attended the school year-round. *Id.* ¶¶ 4-5. Because this was a legal question of statutory and case law interpretation, the court concluded that no agency expertise was required, and the exhaustion doctrine therefore did not apply. *Id.* ¶ 48.

¶ 42    Mr. Pinkston argues that the same can be said here, where the boundaries of the central business district are established by the Municipal Code. The difference between this case and *Maschek*, however, is that the plaintiff in *Maschek* did not challenge the traffic violation stated on his ticket. He contested neither that he was speeding in a school zone nor the amount of the fine for that violation. *Id.* ¶ 46. His dispute was solely with the means of enforcement the City employed and whether it had the authority to issue his ticket in the manner it did. *Id.* Here, by contrast, to the extent that Mr. Pinkston challenges the violation itself, asserting that, contrary to what was alleged on his ticket, he was not parked in the central business district on May 21, 2019, we agree with the City that DOAH routinely adjudicates questions like this and that the exception to the requirement of administrative exhaustion for situations where there are no factual questions or need for agency expertise is inapplicable.

15

¶ 43                                    4. Irreparable Injury

¶ 44     Mr. Pinkston also insists that being "subjected to the rigors of the City's administrative process" would constitute irreparable harm in this case because he should not have to "incur the costs and expenses associated with challenging a parking ticket that never should have been issued in the first place" or "face the inherent risk of being found liable for such a ticket, even in spite of the fact that the ticket is invalid." The cases he relies on, though they state the irreparable-harm exception without actually applying it, still make clear that the exception is only implicated where a plaintiff must pursue "lengthy administrative procedures that fail to provide interim relief" before filing suit. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 499 (2008); *Canel v. Topinka*, 212 Ill. 2d 311, 321 (2004).

¶ 45     The process for administratively challenging a parking ticket issued by the City is in fact relatively simple. The Municipal Code provides that a vehicle owner who believes a ticket was issued in error may contest the violation by requesting an in-person hearing before an administrative law officer appointed by the traffic compliance administrator. Chicago Municipal Code § 9-100-050(a) (amended Oct. 27, 2021). The individual may alternatively initiate an "administrative correspondence hearing" and contest the violation by mail. Chicago Municipal Code § 9-100-070 (amended Oct. 28, 2015). In either case, the administrative law officer's finding of liability or no liability is a final determination subject to review under the Administrative Review Law. Chicago Municipal Code §§ 9-100-050(d) (amended Oct. 28, 2015), Chicago Municipal Code § 9-100-090(a) (amended Oct. 28, 2015).

¶ 46     As noted above, Mr. Pinkston availed himself of these procedures to challenge his ticket— on the basis that he paid the meter, but his payment became associated with a license plate for some other vehicle. The ticket was issued on May 21, 2019. Six days later, Mr. Pinkston challenged

the ticket by mail, submitting a half-page explanation of his argument and attaching a receipt showing that a metered parking fee payment was made on the day in question for a vehicle with a Minnesota license plate. The records indicate that DOAH was in receipt of that correspondence by June 1, 2019, and issued Mr. Pinkston a finding of liability and a brief explanation of its determination one month later. Mr. Pinkston could have sought review of that determination in the circuit court within 35 days but elected instead to pay the ticket. Nothing about this process is suggestive of a lengthy and onerous administrative proceeding.

¶ 47    Neither *Gold v. Ziff Communications Co.*, 196 Ill. App. 3d 425, 435 (1989), which Mr. Pinkston cites for the proposition that "irreparable harm does not have to be devastating harm," nor *In re Marriage of Sheaffer*, 2013 IL App (2d) 121049, ¶¶ 14-15, in which we held that unnecessary costs associated with relitigating a matter may constitute irreparable harm, involved administrative agency proceedings or the exception to the exhaustion doctrine that Mr. Pinkston invokes. And the irreparable harm alleged in *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 549 (1977), flowed not from the burdensomeness of engaging in an administrative review process, but from the purportedly erroneous agency determination itself—the plaintiff's wrongful suspension from the Medicaid program. These cases do not support Mr. Pinkston's argument that administrative review before DOAH would cause him irreparable harm.

¶ 48    Mr. Pinkston has failed to convince us that the irreparable-injury exception to the exhaustion doctrine applies in this case.

¶ 49                    5. Agency's Inability to Provide Adequate Relief

¶ 50    We are convinced, however, that if as Mr. Pinkston alleges, there is a systemic failure on the part of the City to confine central business district tickets to violations that occur within the established boundaries of that district, DOAH is simply not equipped to provide Mr. Pinkston or

the class with the relief sought in this case and that the administrative exhaustion doctrine is thus inapplicable. It is well settled that administrative remedies need not be exhausted where the reviewing agency is incapable of providing an adequate remedy. *Castaneda*, 132 Ill. 2d at 309. Indeed, it is apparent from the complaint that the gist of the action complained of is not the action of DOAH in adjudicating these tickets but the action of the City in issuing them.

¶ 51    Mr. Pinkston has alleged not just a single erroneous parking ticket or even an unconnected group of such tickets. He instead maintains that the City is engaged in a "routine practice" of issuing central business district metered parking tickets for cars parked outside of the district. He seeks a declaration that the tickets issued in accordance with this practice are invalid, an injunction to halt the practice, and restitution for those harmed by the practice. We fail to see how the DOAH, which is tasked merely with making a finding of liability or no liability with respect to each individual ticket that comes before it (see Chicago Municipal Code §§ 9-100-070(d), 9-100-090(a) (amended Oct. 28, 2015)), could provide Mr. Pinkston with any of this relief.

¶ 52    Some cases have addressed this exception to the exhaustion doctrine in terms of whether administrative review is even applicable. On this point, *Board of Education*, 395 Ill. App. 3d 735 (2009), discussed above, is instructive. The plaintiff in that case was denied leave to file an amended complaint alleging that an agency had miscalculated teacher pensions, on the basis that the claim was one within the purview of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2006)) and, not having been challenged in the circuit court within 35 days of the agency's final decision, was untimely under section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2006)). *Board of Education*, 395 Ill. App. 3d at 741-43. We disagreed with this ruling on appeal. We pointed out that the plaintiff had not alleged *individualized* pension miscalculations in the proposed amendment but rather a "systemic miscalculation." *Id.* at 744. The

18

challenge was thus not to an " '[a]dministrative decision,' " which is defined in the Administrative Review Law as a "decision, order or determination of any administrative agency rendered in a particular case." *Id.* at 744 (quoting 735 ILCS 5/3-101 (West 2006)). Because only a challenge to *an administrative decision* must be brought within 35 days, the plaintiff's challenge to the agency's broader policy or practice of calculating pensions in the manner it did was not governed by the Administrative Review Law and was thus not untimely. *Id.* at 744.

¶ 53    Here, section 11-208.3(d) of the Vehicle Code states that "final determinations of parking, standing, compliance, automated speed enforcement system, or automated traffic law violations *** shall be subject to the provisions of the Administrative Review Law." 625 ILCS 5/11-208.3(d) (West 2020). As in *Board of Education*, however, Mr. Pinkston is not seeking any such individualized determination. He is asking for a court to determine if the City is engaged in the routine practice he alleges and, if so, for the court to condemn the practice, forbid it going forward, and redress the harm the practice has already caused. As in *Board of Education*, the judicial determinations sought in this case fall outside of the scope of the Administrative Review Law. The exhaustion doctrine simply does not apply to claims that the City has a widespread policy or is engaged in the routine or systemic practice of issuing central business district metered parking tickets outside of the district's established boundaries. We conclude that dismissal on this basis was not proper.

¶ 54    The cases relied on by the City are quite different. The plaintiff in *Calderwood Corp. v. Mahin*, 57 Ill. 2d 216, 219 (1974), rather than seeking review of a tax imposed by the Director of Revenue through the Administrative Review Act, filed a suit for an injunction to stop the collection of the tax. Our supreme court explained: "The issues sought to be raised by [the plaintiff] could have been raised in administrative proceedings before the Department, and its determination could

have been challenged under the Administrative Review Act." (Internal quotation marks omitted.) *Id.* at 221. There was no question that the administrative review process would have addressed the very issues and allowed for the very relief that the plaintiff in that case raised in its claim for an injunction.

¶ 55    In *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 313, 317 (1996), an employer sought relief from IDES's practice of what it claimed was retroactively assessing unemployment taxes. While that case, like this one, involved a widespread practice, the problem there was that the agency had already ruled that the practice was authorized and appropriate, the circuit court had upheld that determination on administrative review, and the plaintiff had failed to appeal that decision. *Id.* at 314-15.

¶ 56    The plaintiff in *Midland Hotel* then attempted to collaterally attack that holding by filing a class action complaint in the chancery division of the circuit court. *Id.* at 316. It was in this context that we affirmed the dismissal of the chancery complaint on grounds of *res judicata* and collateral estoppel and noted that "[a]n administrative review judgment cannot be avoided by bringing a subsequent class action." *Id.* at 316, 321. The bars of *res judicata* and collateral estoppel that dictated dismissal in *Midland Hotel* are simply not present here. There has been no finding by DOAH that it was proper for the City to engage in the practice that is alleged in this case.

¶ 57    At oral argument, counsel for the City relied on *Midland Hotel* to make a different argument—that a determination by DOAH that Mr. Pinkston's individual ticket was *improper* was a necessary "springboard" for him to then to seek injunctive relief in the circuit court. The *Midland Hotel* court did note that if the plaintiff in that case managed to "successfully challenge an [agency] order by using the administrative review procedure," it could then use that determination to seek an injunction in a separate action. *Id.* at 321. As the court recognized in *Midland Hotel*, there was

a legal issue as to whether the IDES practice was correct and the proper way to raise that issue was through administrative review.

¶ 58     Here, however, there is no question that central business district parking tickets must be issued only for parking meter violations within the central business district. Thus, there is simply no legal or factual issue that must be addressed through administrative procedures. Here, Mr. Pinkston's complaint is not about how DOAH adjudicates these tickets—it is about the way that the City issues them. Mr. Pinkston seeks an injunction that will stop the City from routinely issuing these erroneous tickets so that they and the class they seek to represent will not have to defend themselves on tickets that impose fines in excess of what is authorized by the Municipal Code. No finding by DOAH, or on administrative review of a DOAH decision, is a necessary springboard for this action.

¶ 59     It bears noting how our supreme court has explained the exhaustion doctrine:

"Where the Administrative Review Law is applicable *and provides a remedy*, a circuit court may not redress a party's grievance through any other type of action. The court's power to resolve factual and legal issues *arising from an agency's decision* must be exercised within its review of the agency's decision and not in a separate proceeding." (Emphases added.) *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 551-52 (1999).

Here, the factual and legal issues that must be resolved do not "arise from" an agency decision. *Id.* And, as discussed above, the Administrative Review Law does *not* provide the remedy Mr. Pinkston seeks.

¶ 60     To be clear, if on remand the evidence fails to support a finding that the City is engaged in the "routine practice" Mr. Pinkston has alleged, then the exhaustion doctrine will indeed apply to

any attempts through this litigation to adjudicate parking tickets on an individualized basis or to review administrative decisions outside the strictures of the Administrative Review Law. At this stage, however, the allegations must be taken as true and viewed in the light most favorable to Mr. Pinkston and the proposed class. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). Mr. Pinkston has articulated claims that, depending on how one prefers to view them, either fall within an established exception to the exhaustion doctrine or are simply not subject to the provisions of the Administrative Review Law and thus not subject to the exhaustion doctrine.

¶ 61                                 B. The Voluntary Payment Doctrine

¶ 62    The City argues in the alternative that because Mr. Pinkston elected to pay his ticket before he initiated this lawsuit, dismissal was proper under the voluntary payment doctrine, which generally provides that "money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 22. Although the circuit court declined to dismiss on this basis, the City reminds us that we may affirm a dismissal for any reason supported by the record. *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (2004).

¶ 63    We agree with the circuit court, however, that questions of fact remain precluding dismissal on this basis. It is unclear, for example, whether Mr. Pinkston in fact knew that his vehicle had not been parked within the boundaries of the central business district when, at the conclusion of his administrative challenge on unrelated grounds, he elected to pay the ticket rather than challenge it further. If he did not, it could hardly be said that he paid the ticket "with knowledge of the facts." See *Dreyfus v. Ameritech Mobile Communications, Inc.*, 298 Ill. App. 3d 933, 938 (1998) (noting that a payment is involuntary if "the payor lacked knowledge of the facts upon which to protest

the payment at the time of payment"). Mr. Pinkston also alleged that he paid the ticket under duress, to avoid late fees, interest, the immobilization of his vehicle, the suspension of his driver's license, and other consequences. Whether these consequences were a true threat to Mr. Pinkston and whether their imposition was likely to deprive him of a necessary good or service are determinations that also involve questions of fact.

¶ 64    Finally, neither party has addressed how, if at all, the voluntary payment doctrine applies in this context of a potential class action challenge to an allegedly broad practice of issuing tickets contrary to the provisions of the Municipal Code.

¶ 65    Given these unresolved questions of fact and law, we cannot affirm the circuit court's dismissal of Mr. Pinkston's complaint on the basis that his claims were barred by the voluntary payment doctrine.

¶ 66                                IV. CONCLUSION

¶ 67    For the above reasons, we reverse the circuit court's dismissal of the class action complaint in this matter and remand for further proceedings consistent with this opinion.

¶ 68    Reversed and remanded.


¶ 69    JUSTICE ODEN JOHNSON, dissenting:

¶ 70    I respectfully disagree with the majority's contention that plaintiff did not have to exhaust his administrative remedies prior to filing an action in equity.

¶ 71     A motion for involuntary dismissal under section 2-619(a)(9) of the Code admits the legal sufficiency of the complaint, accepts all well-pleaded facts, and asserts an affirmative matter outside of the complaint that bars or defeats the cause of action. 735 ILCS 5/2-619(a)(9) (West 2018); *Gajda v. Steel Solutions Firm, Inc.*, 2015 IL App (1st) 142219, ¶ 29. The defendant has the

initial burden of establishing that there is an affirmative matter that defeats the claim. *Gajda*, 2015 IL App (1st) 142219, ¶ 29. If the defendant successfully asserts an affirmative matter, the burden shifts to the plaintiff to demonstrate that the defense is unfounded or requires the resolution of a material fact. *Id.* If the plaintiff fails to meet the shifted burden, the motion may be granted and the complaint dismissed. *Id.* An affirmative matter for a 2-619(a)(9) motion cannot merely refute well-pleaded facts- it must assert a completely new matter not present in the complaint. *Id.* ¶ 30. We review the dismissal of a complaint pursuant to section 2-619(a)(9) *de novo*. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008).

¶ 72    In the circuit court, the City argued that plaintiff's complaint should be dismissed because it was an improper collateral attack on an administrative decision and that the court therefore did not have jurisdiction as plaintiff failed to exhaust his administrative remedies. In response, plaintiff argued that no administrative proceeding was necessary, and the exhaustion of remedies doctrine did not apply because the ticket was void. The circuit court found, and the majority agrees, that the parking ticket issued to plaintiff was not void but voidable, that the City had jurisdiction to issue the ticket, that whether or not plaintiff's administrative challenge to the ticket was futile did not justify skipping the administrative process, and further that the administrative process could be avoided because no agency expertise was involved. The circuit court concluded that none of the exceptions to the exhaustion remedy applied and that plaintiff failed to exhaust his administrative remedies. My colleagues have concluded differently, on the basis that DOAH could not have provided plaintiff with the "ultimate relief" sought.

¶ 73    Parties aggrieved by the action of administrative agency ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to them. *Castaneda v. Illinois Human Rights Commission*, 132 Ill. 2d 304, 308 (1989). Requiring the exhaustion of

24

remedies allows the administrative agency to fully develop and consider the facts of the cause before it; it allows the agency to utilize its expertise; and it allows the aggrieved party to ultimately succeed before the agency, making judicial review unnecessary. *Id.* Our supreme court has recognized several exceptions to this rule: an aggrieved party may seek judicial review of an administrative decision without complying with the exhaustion of remedies doctrine where (1) a statute, ordinance or rule is attacked as unconstitutional on its face; (2) multiple administrative remedies exist and at least one is exhausted; (3) the agency cannot provide an adequate remedy or it is patently futile to seek relief before the agency; (4) no issues of fact are presented or agency expertise is not involved; (5) irreparable harm will result from further pursuit of administrative remedies; or (6) the agency's jurisdiction is attacked because it is not authorized by statute. *Id.* at 309.

¶ 74 Under the Chicago Municipal Code, if a ticket recipient challenges a parking ticket, an administrative hearing officer will consider the evidence, make factual findings, apply the law to those findings, and determine whether the ticket recipient is liable for violating the ordinance. See *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 974-75; 978 (1999). The ordinance specifically provides that all findings of liability made by the hearing officers are reviewable by the circuit court under the Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2018)). Chicago Municipal Code § 9-100-070(d), 090(a) (amended Oct. 28, 2015).

¶ 75 A review of plaintiff's complaint reveals the following prayers for relief: (1) a declaration that "all such improperly issued Central Business District Tickets are invalid," void and unenforceable, and (2) "recovery of the amounts they paid to the City in connection with these invalid Central Business District Tickets;" and (3) "injunctive relief that would prevent the City from improperly issuing Central Business District Tickets to vehicles parked outside of the City's

Central Business District."

¶ 76    The majority properly disposed of plaintiff's first requested relief – a declaration that all such improperly issued Central Business District Tickets are invalid, void, and unenforceable by finding that such tickets are voidable, and that the City has the authority to issue such tickets. Regarding plaintiff's second prayer for relief, recovery of the amounts paid to the City in connection with the parking ticket, I find that such relief is governed by an administrative challenge to the ticket, which plaintiff failed to do. Before determining whether plaintiff or other members of the proposed class are entitled to a refund, however, there must be a factual determination as to whether plaintiff's ticket was issued outside of the Central Business District, which is the province of the DOAH. See *O'Brien v. Musfeldt*, 345 Ill. App. 12, 22 (1951); *Wuebbles v. Shea*, 294 Ill. App. 157, 162 (1938). This same determination is applicable to plaintiff's prayer for injunctive relief to keep the City from improperly issuing such tickets; there must first be a finding that the tickets are improper.

¶ 77    To the extent that plaintiff seeks review of the propriety of the ticketing and assessment of related fines and fees, the circuit court has no jurisdiction to review those matters as a result of plaintiff's failure to exhaust his administrative remedies and those claims were properly dismissed under section 2-619(a). It is well established that where administrative remedies are available to a litigant, the litigant must exhaust them before seeking review by the trial court. 735 ILCS 5/3-102 (West 2016); *Arvia v. Madigan*, 209 Ill. 2d 520, 531-32 (2004). As noted above, the City provides for administrative adjudication of disputed parking tickets. Here, there is no dispute that plaintiff did not seek administrative review of the propriety of his parking ticket or the resulting fine or fee on the bases raised in his complaint or on this appeal. The circuit court has no statutory authority to entertain independent causes of action regarding the agency's actions. *Arvia*, 209 Ill. 2d at 532.

26

Plaintiff's failure to exhaust his administrative remedies leaves the circuit court without authority to address plaintiff's claims regarding the propriety of the ticketing or imposition of the fee. I disagree with the majority's holding that plaintiff meets an exception to the exhaustion of remedies doctrine, namely that the DOAH could not provide him with the ultimate relief he sought. Such relief is premised on the factual finding of whether such ticket for illegally parking within the Central Business District was proper, which is squarely within the authority of the DOAH and not the circuit court. Additionally, until such factual determination is made, I do not believe that we can reach the issue of whether the City's alleged practice is systemic or not. I would therefore conclude that plaintiff fails to meet any of the exceptions to the exhaustion of remedies doctrine and affirm the judgment of the circuit court.

**No. 1-20-0957**

| | |
|---|---|
| **Cite as:** | *Pinkston v. City of Chicago*, 2022 IL App (1st) 200957 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19 CH 12364, the Hon. Caroline K. Moreland, Judge Presiding. |
| **Attorneys for Appellant:** | Thomas A. Zimmerman, Jr. and Matthew C. De Re, of Zimmerman Law Offices, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel of the City of Chicago (Myriam Zreczny Kasper, Chief Assistant Corporation Counsel, and Justin A. Houppert, Senior Counsel, of counsel), for appellee. |